**Dale L. ROBEY, Plaintiff,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, Defendant.**

Civ. A. No. 596.

United States District Court
W. D. Arkansas,
Fayetteville Division.

July 11, 1967.

474

E. J. Ball, Fayetteville, Ark., for plaintiff.

Putman, Davis & Bassett, Fayetteville, Ark., for defendant.

## OPINION

JOHN E. MILLER, District Judge.

The questions for decision are presented by cross motions for summary judgment.

The plaintiff commenced this suit on November 18, 1966. He is a citizen of Arkansas and a resident of Fayetteville. The defendant is a corporation with its principal place of business in Seattle, Washington. Jurisdiction is based upon diversity of citizenship and the amount involved.

In addition to the jurisdictional allegations, the plaintiff in his complaint alleged:

"On or about August 27, 1965, the defendant, for a valuable consideration, issued to plaintiff, as named 'insured', its automobile policy numbered J–103941 covering a 1963 Buick owned by him, and on August 29, 1965, defendant, for a valuable consideration, issued to plaintiff, as named 'insured', a second policy of automobile insurance numbered J–109255, covering a 1961 International Scout owned by the plaintiff * * *."

The terms of the policies are identical with the exception of the amount of the coverage and the description of the vehicles and the date. Both policies contained, among other provisions, "Coverage G–Damages for Bodily Injury Caused by Uninsured Automobile Section," thereafter referred to in the policies as "Uninsured Motorists."

The policies also contained "Medical Expenses Section," under which the defendant agreed to pay all reasonable expenses incurred within one year from the date of accident for necessary medical, dental, surgical, X-ray, ambulance, hospital, nursing, etc. The limit of medical liability in policy No. 103941, 1963 Buick, was $1,000, while policy 109255, 1961 International Scout, was $2,000.

The complaint further alleged that on October 29, 1965, the plaintiff, along with another person, was riding as a guest passenger in an automobile, a 1956 Chevrolet Station Wagon, Bel Air, owned and being driven by Robert E. O'Connell, Jr.; that the Chevrolet collided with a certain 1961 Chevrolet two-ton truck being driven and operated in a negligent and reckless manner by Marvin Lee Dobbs, "and solely as a result of such negligence, the said Robert E. O'Connell, Jr., and the other passenger were killed and the plaintiff suffered severe personal injuries." That the said Marvin Lee Dobbs was an uninsured motorist within the definition of the policies sued upon. Then follows specific allegations as to the personal injuries received by plaintiff in said collision.

The plaintiff's expenditures for medical, hospital and dental expenses amounted to $2,464.84 as of May 1, 1966, and such expenses continued through the expiration of one year from October 29, 1965; that by reason of the personal injuries, temporary total disability and permanent residual disability, loss of salary, past and future, medical, etc., expenses, and pain and mental anguish, past and future, the plaintiff has been damaged in the amount of $200,000.00.

It is further alleged that "plaintiff has made demand upon the defendant for payment of the sum of $20,000.00 under the uninsured motorist coverage of the policies of insurance and for the sum of $2,464.84 under the medical expense coverage of such policies but the defendant has failed and refused, unjustifiably, to make such payment and by reason of

such refusal the plaintiff is entitled to recover in addition to the contract amounts, a 12% penalty and a reasonable attorney's fee."

The court granted defendant additional time in which to answer or otherwise plead to the complaint, and on January 10, 1967, the defendant filed its answer, in which it admitted the jurisdictional allegations; that it had issued and delivered the policies to the plaintiff as set forth in the complaint; and that the policies provided certain medical coverage as alleged, but denied that it was liable to the plaintiff for medical expenses. It admitted the allegations of the complaint relative to the collision of the Chevrolet driven by Robert E. O'Connell, Jr., and the truck owned by Marvin Lee Dobbs, but denied that the said Dobbs was operating the truck in a willful, wanton and reckless manner, and that the personal injuries received by plaintiff and the deaths of the other occupants of the O'Connell vehicle were the result of negligence of the said Dobbs.

The defendant admitted that Dobbs was an uninsured motorist within the definition of the policies sued upon, and "also within the definition of policy No. AD 2507 issued by Northwestern Security Insurance Company, a true and correct copy of said policy being identified as Exhibit A to the Requests for Admission of Facts and admitted by plaintiff."

Admitted that plaintiff has incurred medical expenses in the amount of $2,464.84 in the one-year period following the alleged accident, but denied that it owes plaintiff more than $1,464.84 of said expenses; that the terms, conditions and provisions of the medical expenses section of the policies sued upon provide that the medical payments coverage with respect to a nonowned automobile, as was the O'Connell automobile in which plaintiff was riding at the time of the accident, shall be excess insurance over any other valid and collectible automobile medical payments insurance; that plaintiff is an insured under Policy No. AD 2507 covering the automobile of Robert E. O'Connell,

Jr., that was involved in the accident; that as an insured, plaintiff has already collected $1,000.00 under Coverage B of said Policy No. AD 2507, being the maximum payable to one person under said policy for medical expenses incurred in said accident; and "that defendant stands ready and willing to pay plaintiff the sum of $1,464.84 in full and final satisfaction of its obligations under the Medical Expenses Section of the subject policies."

Other allegations in the complaint were generally and specifically denied, and in paragraph 13 of the answer the defendant alleged:

"* * * that plaintiff was and is an insured under said Policy No. AD 2507 issued by Northwestern Security Insurance Company to Robert E. O'Connell, Jr. and specifically covering the described automobile in which plaintiff was riding at the time of the accident; that said policy provides to plaintiff, as an insured thereunder, protection against damages for bodily injuries caused by uninsured motorists, to a maximum limit of $10,000.00; that because of the existence of such primary insurance to the extent of $10,000.00 provided to plaintiff by said Policy No. AD 2507, for which sum plaintiff has brought suit against Northwestern Security Insurance Company in Civil Action No. 598 pending in this Court, defendant is not liable to plaintiff in any amount whatever under Coverage G of the subject policies, according to the terms, provisions, exceptions and conditions thereof which are hereby pleaded by reference thereto."

On May 11, 1967, the defendant filed an amendment to its answer, in which it stated:

"* * * defendant admits that the collision between the O'Connell automobile and the vehicle of Dobbs was caused by negligence on the part of Dobbs, and that whatever injuries plaintiff sustained as a direct consequence of said collision were proximately caused by such negligence."

It also alleged:

"In the event the plaintiff should recover any amount whatever under Coverage G (Uninsured Motorist coverage) of the policies in suit, defendant is entitled to a reduction in and set-off against such amount in the sum of $1,464.84 or other amount payable under Coverage C (Medical Expenses coverage) of the policies, as provided in paragraph (d) of 'Limits of Liability' under Coverage G of the policies.

"Except as herein specifically amended, defendant adopts its answer as previously filed.

"WHEREFORE, defendant prays as in its original answer, and in the alternative, for reduction in and set-off against any amount awarded to plaintiff under Coverage G of the policies in whatever sum shall be awarded to plaintiff as medical expenses under Coverage C of the policies, and for all proper relief."

Before stating the facts and discussing the issues in the instant case, it seems necessary to a clear understanding of the issues and the contentions of the parties to refer rather fully to Civil Action 598 in this court, wherein the plaintiff in the instant case commenced an action against Northwestern Security Insurance Company to recover on the uninsured motorist provisions contained in policy AD 2507 issued by Northwestern to Robert E. O'Connell, Jr., the named insured. The limit of the policy was $20,000 for any one accident. Riding as passengers in the O'Connell automobile were Clarence E. Wilson and Dale L. Robey. Robert E. O'Connell, Jr., was the owner of the automobile and was driving. He and Clarence E. Wilson were killed in the collision between an uninsured truck owned and driven by Marvin Lee Dobbs, an uninsured motorist, and the automobile of O'Connell. The plaintiff in the instant case, Dale L. Robey, was severely injured.

Immediately following the collision, and prior to the filing of the suit, Civil No. 598, by Robey, the insurer, Northwestern Security Insurance Company, paid the Administratrix of the Estate of Robert E. O'Connell, Jr., deceased, the Administratrix of the Estate of Clarence E. Wilson, deceased, and the plaintiff in the instant case, Dale L. Robey, the sum of $1,000 each for medical expenses, as provided in the O'Connell policy. Upon the filing of the suit by Robey, Northwestern filed its answer and a counterclaim against Robey, and a cross claim against the Administratrices. It deposited in the registry of the court the balance of $17,000, and asked the court to distribute said sum between the plaintiff Robey and the Administratrices under the uninsured motorist provisions in the O'Connell policy. The Administratrices and Robey could not agree upon the amount that each should receive from Northwestern, and after a hearing to determine a division of the $17,000 in the registry of the court, the court on May 19, 1967, filed its opinion, Robey v. Northwestern Security Insurance Company, 270 F.Supp. 466, and entered judgment awarding Adele Louise O'Connell, Administratrix, the sum of $9,000; Judith A. Wilson, Administratrix, the sum of $5,000; and Dale L. Robey the sum of $3,000. The order further directed the Clerk of the Court to withhold payment of the amounts awarded until the time for filing an appeal had expired unless counsel for the respective clients filed with the Clerk of the Court a statement in writing that no appeal would be prosecuted. Such a statement was filed, and the payments have been made as directed by the court.

On April 18, 1967, the plaintiff filed a motion for partial summary judgment for medical expenses. On May 9, 1967, the defendant filed a cross motion for summary judgment, in which it stated:

"Comes the defendant, and pursuant to F.R.C.P. 56(b) respectfully moves the Court to enter summary judgment in its favor on the complaint herein except for the sum of $1,464.84 which defendant admits owing to plaintiff.

"Defendant states that no genuine issue exists as to any material fact regarding the medical payments coverage and uninsured motorist coverage provided in the policies in suit, and that

defendant has no liability to plaintiff as a matter of law, except for the sum of $1,464.84 admittedly owing under the medical payments coverage."

Following the submission of briefs by the parties, the plaintiff filed an amended motion for summary judgment, as follows:

"Comes the plaintiff by his attorneys and by agreement of opposing counsel and pursuant to Rule 56(a) Federal Rules of Civil Procedure, 28 U.S.C.A., moves the court for summary-judgment in his favor against the defendant on the ground that there are no genuine issues of material fact and the plaintiff is entitled to judgment against the defendant as a matter of law.

"This motion is intended as amendatory of the motion for partial summary judgment filed herein on or about April 18, 1967, to move for summary judgment in toto. The briefs and other material filed pursuant to the prior motion are herewith adopted and reasserted herein."

An examination of the pleadings, interrogatories, and answers thereto, and admissions, along with the briefs of the parties establishes that there is no genuine issue as to any material fact.

The plaintiff, Robey, received serious personal injuries in the collision of the O'Connell automobile with the truck driven by Dobbs. Dobbs was an uninsured motorist. The injuries received by the plaintiff, Robey, and the deaths of O'Connell and Wilson were proximately caused by the negligence of the uninsured motorist, Dobbs.

The total liability under the uninsured motorist provisions of the policy issued by Northwestern Security Insurance Company to O'Connell was $20,000. The insurer of O'Connell immediately recognized its liability for medical expenses and met its obligation under the policy, which reduced its liability to $17,000. The court in Civil No. 598 found that the damages sustained by the Administratrices of the estates of the deceased O'Connell and Wilson and of Robey greatly exceeded the sum of $20,000, or the limit of liability under the Northwestern policy, and proceeded to award to such persons the amounts hereinbefore set forth.

Robey owned two motor vehicles, a 1963 Buick, upon which the defendant, on August 27, 1965, issued its liability policy, No. 103941, for a total premium of $59.27; and a 1961 International Scout, upon which the defendant, on August 29, 1965, issued its liability policy, No. 102955, for a total premium of $44.97. Both policies were in full force and effect on the date Robey received the injuries complained of herein.

The controversy revolves around three separate and distinct issues, each of which must be determined separately. These issues are:

1. What is the effect, if any, of the "uninsured motorist" clause in O'Connell's Northwestern policy and Robey's recovery of $3,000 thereunder upon Safeco's liability to Robey under the "uninsured motorist" clause in the Safeco policy?

2. If Safeco is liable to Robey under one policy, is it also liable (and for what amount) under the second policy?

3. If liable to Robey, on either or both of the policies, is Safeco entitled to deduct from the amount found due for bodily injuries, the balance of $1,464.84 for medical expenses not received by Robey under the Northwestern policy?

The uninsured motorist statute of Arkansas, Ark.Stat.Ann. § 66-4003 (1966 Repl.), provides:

"No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in not less than limits described in section 27 of Act 347 of 1953 [§ 75-1427], as amended, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to

recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage."

Section 75–1427 (1965 Supp.) referred to in the above statute provides that no policy or bond shall be effective:

"* * * unless issued by an insurance company or surety company authorized to do business in this State * * * unless such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than $10,000 because of bodily injury to or death of one (1) person in any one (1) accident and subject to said limit for one (1) person, to a limit of not less than $20,000 because of bodily injury to or death of two (2) or more persons in any one (1) accident * *.'"

The above which is a portion of Section 27 of Act 347, of the Acts of the General Assembly of Arkansas for 1953, is designated Motor Vehicle Safety Responsibility Act.

The uninsured motorist coverage in both Safeco policies provides that the insurer will "pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile * * *.'"

There is a further provision that if the insured and Safeco cannot agree that the insured is legally entitled to recover such damages, or the amount thereof, the question shall be submitted to arbitration. Also, that no judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive as between the insured and Safeco of the issues of liability or the amount to which the insured is legally entitled, unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of Safeco.[1]

The defendant admits that the injuries received by plaintiff were proximately caused by the negligence of the uninsured motorist. No contention is made that the damages sustained by plaintiff are not greatly in excess of $20,000.

The limits of liability in the policies are as stated:

"LIMITS OF LIABILITY:

"(a) The limit of SAFECO's liability under this section shall be the limit of bodily injury liability required by the motor vehicle financial responsibility law of the state

---

1. The defendant makes no contention that the requirement of arbitration or that written consent of the insured is necessary before a suit can be maintained under the uninsured motorist provision. In Wortman v. Safeco Ins. Co., (E.D.Ark. 1963) 227 F.Supp. 468, at page 470, Judge Young, in considering the provision for arbitration, said: "[I]t is clear that the Arkansas law makes such a clause unenforceable and void." Ark.Stat.Ann., § 66–3233 (1956 Repl.). The same pronouncement was made in MFA Mutual Ins. Co. v. Lovins, (E.D.Ark.1965) 248 F.Supp. 108. Also, in MFA the same court, in considering the provision forbidding the insured to sue the tortfeasor

without the consent of the insurer, at page 111 said:
"This court has little doubt that the Supreme Court of Arkansas would hold that the clause forbidding the injured insured to sue the tort-feasor without the consent of his insurance company, upon penalty of the insured losing his contract coverage, is against public policy and void."
The court also held that a judgment recovered by the insured against the uninsured torfeasor is binding upon the insurance company of the insured, both as to liability and amount of damages, and particularly where the insured had ample opportunity to take necessary steps to protect interests in that suit.

of residence, as shown on the declarations;

"(b) Any amount payable under the terms of this section because of bodily injury sustained in an accident by a person who is an insured under this section shall be reduced by

(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under Coverage A, and"

The defendant states in its cross motion for summary judgment "that defendant has no liability to plaintiff as a matter of law except for the sum of $1,464.84 admittedly owing under the medical payments coverage."

The Uninsured Motorist Act, Section 1 of which has heretofore been set forth, was passed by the General Assembly of Arkansas as Act 464 of the Acts of 1965. It will be noted that the section above quoted provides that no automobile liability policy shall be issued unless coverage therein is provided, *"in not less than limits described in section 27 of Act 347 of 1953* [§ 75–1427], *as amended,* under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles · * * *." (Emphasis added.) The Act also provides that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.

The learned attorneys for the defendant apparently contend that the defendant is not liable where policies aggregating more than the minimum requirements of the Motor Vehicle Safety Responsibility Act have been issued.

In defendant's brief the attorneys refer to the decision of this court in Civil 598, Robey v. Northwestern Security Insurance Company, 270 F.Supp. 466, and state:

"According to the findings of the Court, this is about the amount which Robey would have received from the liability insurer of Dobbs, the other driver, had Dobbs been covered by insurance as required under the Arkansas Motor Vehicle Safety Responsibility Law. In short, at this point, Robey is in the exact position he would have been in had Dobbs been insured according to law. The purpose of the uninsured motorist law has been completely satisfied."[2]

 In support of this contention they cite Couch on Insurance, 2d (1964), § 45–623, Volume 12, page 570. The court does not agree for the reason that under the Arkansas statute an insurance company may provide in its policies coverage in any sum above the minimum which it chooses to pay in the event of the liability of an uninsured motorist if the insured accepts such policies. The statute merely requires that the amount for which a policy is issued by an insurance company shall be not less than the limit described in the Motor Vehicle Safety Responsibility Act.

In Deterding v. State Farm Automobile Ins. Co., (1966) 78 Ill.App.2d 29, 222 N.E.2d 523, at page 525, the court said:

"The statute does not require uninsured motorist protection. It permits the insured to reject the coverage. In effect it says this coverage must be

**2.** The Motor Vehicle Safety Responsibility Act does not provide for universal application throughout the State. Section 43 of the Act (75–1443) requires proof of financial responsibility for the future (i. e., mandatory liability insurance) but requires proof only of those drivers "who have been convicted of or forfeited bail for certain offenses under motor-vehicle laws or who have failed to pay judgments upon causes of action arising out of ownership, maintenance or use of vehicles of a type subject to registration under the laws of this State."

offered and must be given unless rejected. The statute does not provide for a maximum protection and, indeed, it is doubtful that a valid statute could be designed to prevent parties from contracting for higher limits than those prescribed as minimum."

Sec. 66–3631, Ark.Stat.Ann., (1966 Repl.), provides that when any provision in a policy is in conflict with any provision of the statute, "the right, duties, and obligations of the insurer, the insured and the beneficiary shall be governed by the provision of this chapter." This is § 416 of Act 148 of the Acts of 1959 of Arkansas, the general insurance statute of Arkansas.

Subsection (a) under "Limits of Liability" in the uninsured automobile section provides: "The limit of Safeco's liability under this section shall be the limit of bodily injury required by the motor vehicle financial responsibility act of the state of residence." Under this provision the defendant contends that its liability is limited by the motor vehicle safety responsibility act, but as heretofore stated, that Act does not fix the maximum limit of liability but only the minimum liability. The plaintiff is seeking to recover only the amount stated in each policy which is the minimum.

Subsection (b) of "Limits of Liability" provides that any amount payable under the terms of the uninsured automobile section shall be reduced by all sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured automobile, and any other person or organization, jointly or severally liable with such owner or operator for such bodily injury including all sums paid under Coverage A. The uninsured motorist act contains provisions for subrogation of an insurer making payment, but in the instant case no payments have been received by the plaintiff except a portion of the liability under the Northwestern policy, heretofore referred to.

This brings the court to a consideraion of the defendant's contention that it has no liability to the plaintiff under the uninsured motorist coverage of the policies in suit because of the "other insurance" provisions of the policies. The Northwestern policy issued to O'Connell, the driver of the ill-fated Chevrolet, contained an "other insurance" provision identical with the "other insurance" provisions in the policies issued by Safeco.

In Zurich General Acc. & Liability Ins. Co., Ltd. v. Clamor, (7 Cir. 1941) 124 F.2d 717, at page 719, Judge Major of the Seventh Circuit, in considering "other insurance" clauses in various policies, said:

"The old controversy as to which came first, the hen or egg, would be almost as easy of solution as the instant problem."

In effect the defendant contends that because of the "other insurance" provisions in the Northwestern policy and in the two policies involved in the instant suit, its only liability to the plaintiff is $1,464.84, which the defendant arrives at by subtracting the $1,000 received by plaintiff from Northwestern for medical expenses of $2,464.84. The "other insurance" provision under the "Medical Expenses Section" provides:

"If there is other automobile medical payments insurance against a loss covered by Medical Expenses Section of this policy SAFECO shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance."

The "other insurance" provisions under "Uninsured Automobiles Section" in the policies are as follows:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Uninsured Motorists shall apply only as excess insurance

over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and SAFECO shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

In support of its contentions that the above provisions bar plaintiff from recovering on either or both of the policies in suit, defendant cites, among others, three California cases.[3]

The Insurance Code, Annotated, of California, Section 11580.2(d), provides:

"Proration of damage in event of multi-coverage. Subject to paragraph (c) (2), the policy or endorsement (uninsured motorist) may provide that if the insured has insurance available to him under more than one uninsured motorist coverage provisions, any damages shall be prorated between the applicable coverages as the limits of each coverage bears to the total of such limits."

The Arkansas Uninsured Motorist Act contains no similar provisions.

An examination of the other decisions in the uninsured motorist cases cited and relied upon by defendant discloses that the decisions are based on the particular facts, the provisions of the uninsured motorist statutes, and the policy involved as applied to the facts.

In Bryant v. State Farm Mutual Automobile Ins. Co., (March 8, 1965, Ct.App. Va.) 205 Va. 897, 140 S.E.2d 817, the facts were that on April 20, 1959, the plaintiff, Bryant, Jr., was driving on the highway in a 1958 Ford truck owned by his father, Bryant, Sr., when he was struck and injured by an uninsured motor vehicle being driven by Whithorn. He brought suit in Amherst County against the driver and owner of the vehicle on February 6, 1961, recovered a judgment against them for $85,000. At the time of the accident Bryant, Jr., was an insured under the terms of a bodily injury liability insurance policy issued by State Farm to his father, Bryant, Sr., which covered Bryant, Sr., "and any other person while occupying the insured motor vehicle"; and he, Bryant, Jr., was also the named insured in a bodily injury liability policy issued to him by State Farm, and in his suit against Whithorn and others he served a copy of process on State Farm. Each policy had a limit of $10,000 for each person injured. After obtaining judgment against Whithorn and the owner, suit was commenced by Bryant, Jr., as plaintiff to recover on the policy issued to him by State Farm, to which State Farm filed a plea asserting that there was no liability upon it under its policy issued to Bryant, Jr., because that policy contained an "other insurance" provision. The "other insurance" provision relied upon and pleaded by State Farm is practically the same as the "other insurance" provision contained in the policies involved in the instant case.

The court stated:

"The controlling question is whether the limitation of liability in the policy issued to Bryant, Jr., as quoted above, is valid and effective under the terms of said § 38.1–381 of the Code."

---

3. Kirby v. Ohio Casualty Ins. Co., 232 Cal.App.2d 9, 42 Cal.Rptr. 509 (1965); Grunfeld v. Pacific Automobile Ins. Co., 232 Cal.App.2d 4, 42 Cal.Rptr. 516 (1965); Phoenix Assurance Company of New York v. Larsen, 240 Cal.App.2d 94, 50 Cal.Rptr. 111 (1966).

Paragraph (b) of said § 38.1–381 provides:

"Nor shall any such policy or contract relating to ownership, maintenance or use of a motor vehicle be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of § 46.1–1(8), as amended from time to time, of the Code herein. * * *"

A comparison of the provisions of the Virginia statute above quoted and the provisions of the applicable Arkansas statute discloses that they are practically identical.

The court quoted from many decisions of the Virginia court, and in speaking of the provisions of the Virginia statute said:

"Section 38.1–381(b) of the Code, quoted above, commands that *no policy* of bodily injury liability insurance shall be issued or delivered unless it undertakes to pay the insured 'all sums' he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle within the limits of the policy. That is plain language. It means that every such policy shall so undertake. There is no limitation or qualification of this language anywhere in the statute, nothing at all to indicate that it does not mean what it says.

"But Part 4, Section Six, of the insurance policy issued by State Farm to Bryant, Jr., undertakes to limit and qualify the provision of the statute. It undertakes to pay the insured not 'all sums which he shall be legally entitled to recover as damages,' as the statute commands, but only such sum as exceeds 'any other similar insurance available' to him; i. e., the amount by which the applicable limit of the policy 'exceeds the sum of the applicable limits of all such other insurance.' Clearly this provision places a limita-

tion upon the requirement of the statute and conflicts with the plain terms of the statute. It is therefore illegal and of no effect."

The court further said:

"The limit of the recovery of the plaintiff under any or all insurance policies carrying the uninsured motorist provision required by § 38.1–381 (b) would be the amount of the insured's judgment against the uninsured motorist. Here the plaintiff has a judgment for $85,000 upon which he has collected $10,059 from State Farm, in full of the policy issued to his father. He still holds a policy issued to him by State Farm into which the statute puts a provision requiring it to pay him 'all sums' which he is entitled to recover from the owner or operator of the uninsured motor vehicle. The sum he is entitled to recover under that requirement is the unpaid part of his judgment within the limit of the policy. To say that he is not entitled to recover anything under this policy because his father had a policy under which he has received part of the sum he is entitled to recover from the uninsured motorist is to amend the statute, not construe it."

In the decision, the court referred to the case of Travelers Indemnity Co. of Hartford, Conn., v. Wells, (1963 4 Cir.) 316 F.2d 770, and specifically disagreed with the holding of the Circuit Court of Appeals. In reference thereto the court said:

"We cannot agree with that holding. Aside from the Smith insurance not being 'available' to the Wells after the Smiths had taken it all, we are of opinion, as stated above that the Other Insurance provision of the Bryant, Jr., policy is invalid because in conflict with the requirement of § 38.1–381(b) of the Code."

In Sellers v. United States Fidelity & Guaranty Co., (1966 Fla.) 185 So.2d 689, the District Court of Appeal, First District, certified its decision in United States Fidelity & Guaranty Co. v. Sellers, 1965, 179 So.2d 608, as one which passes

upon a question of great public interest. The specific question raised in the certification was stated as follows:

"May an automobile liability insurance carrier providing coverage against injury by an uninsured motorist in accord with the requirements of § 627.-0851, Florida Statutes [F.S.A.], after accepting a premium for such coverage, deny coverage on the ground that the insured has other similar insurance available to him?"

After stating the question, the court said:

"It is our view that the statute, F.S. § 627.0851, F.S.A., operates to invalidate Condition 5 in the United States Fidelity and Guaranty Company automobile liability insurance policy providing petitioners' coverage against injury by an uninsured motorist. We agree with the chancellor in this respect and quash the decision of the District Court of Appeal.

"The pertinent language of the statute (§ 627.0851) is that no automobile liability insurance shall be delivered unless coverage is provided ' * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury * * *.' The limits of such a policy of insurance are required to be the same as provided in the Motor Vehicle Responsibility Law [F.S. § 324.021(7), F.S.A.]. Provision is made in the last paragraph (number 4) of § 627.0851 for the insurer providing said coverage and making payment thereunder to the insured, to recover to the extent of such payment from the proceeds of any settlement or judgment which the insured obtains from any person *or organization* legally responsible for the bodily injury.

"It appears to us that the statute expresses the statutory requirements both as to coverage to be provided by the insurer, and as to its sources of recovery of insurance protection it paid from other persons, including other in-surers legally responsible for the bodily injury to insureds, to the exclusion of inconsistent language inserted in an automobile liability policy. There appears no latitude in the statute for an insurer limiting its liability through 'other insurance'; 'excess-escape' or 'pro rata' clauses, as attempted in Condition 5. If the statute is to be meaningful and controlling in respect to the nature and extent of the coverage and to the sources of recovery and subrogation of the insurer, all inconsistent clauses in the policy to the controlling statutory language such as are contained in Condition 5 must be judicially rejected."

The quotation from the Florida statute, " * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury * * *," is identical with the provision in the uninsured motorist statute of Arkansas.

The court then considered other cases, and joined with the Supreme Court of Virginia in refusing to follow the holding in Travelers Indemnity Co. of Hartford, Conn., v. Wells, supra. It also agreed with the Supreme Court of Virginia in holding that the "other insurance" provision was in derogation of the requirement of the statute, and therefore of no effect. In concluding, the court said:

"Our views herein are predicated upon our construction of § 627.0851. We consider that it provides for a limited type of compulsory automobile liability coverage. It appears to require coverage for bodily injury caused by the negligence of an uninsured motorist to the extent of specific limited amounts. It does not permit 'other insurance' clauses in the policy which are contrary to the statutorily limited amounts of coverage. It is clear that the statute does not limit an insured only to one $10,000 recovery under said coverage where his loss for bodily injury is greater than $10,000 and he is the beneficiary of more than one policy issued under § 627.0851. The statute

is designed to protect the insured as to his actual loss within such limits, but being of statutory origin it is not intended that an insured shall receive more from such coverage than his actual loss, although he is the beneficiary under multiple policies issued pursuant to F.S. § 627.0851, F.S.A. This latter construction appears from paragraph numbered (4) of said section which provides for recovery and subrogation from all persons or organizations legally responsible for the insured's bodily injury caused by an uninsured motorist. This construction requires pro-ration among multiple insurers issuing policies pursuant to F.S. § 627.0851, F.S.A."

Deterding v. State Farm Mutual Automobile Ins. Co., supra, was an appeal from a judgment of the Circuit Court of St. Clair County, Illinois, denying recovery to plaintiff, appellant, in a declaratory judgment suit to declare an automobile liability policy, issued by State Farm Mutual Automobile Insurance Company, defendant, to plaintiff's intestate upon an automobile not involved in the accident, applicable to an accident caused by an uninsured motorist. State Farm had issued two automobile liability insurance policies to plaintiff's intestate, one, upon a Ford pickup truck which plaintiff's intestate was driving when it collided with the car of the uninsured motorist, and another, upon a Pontiac automobile owned by plaintiff's intestate not being driven at the time of the accident. The trial court awarded plaintiff a balance of $9,000 out of the $10,000 limit on the policy covering the pickup truck but denied any benefits under the policy covering the Pontiac automobile, and found that the uninsured motorist provisions of the latter policy were inapplicable. The plaintiff stated that, except for what he termed mutually repugnant escape clauses, there was no dispute but that there was total coverage in the amount of $20,000 under the two policies. The defendant took the position that the "other insurance" clauses presented a

false issue, and that the only issue before the court was whether plaintiff's intestate was entitled to more than $10,-000 under the Illinois uninsured motorist statute.

The uninsured motorist statute of Illinois, Chap. 73, § 755a (Ill.Rev.Stat.), provides:

"On and after the effective date of this amendatory Act of 1963, no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7–203 of the 'Illinois Motor Vehicle Law', approved July 11, 1957, as heretofore and hereafter amended, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, except that the named insured shall have the right to reject such coverage, * * *."

In comparing the provisions of the Illinois statute with the uninsured motorist statute of Arkansas, it is apparent that the two statutes are essentially and practically identical.

The court discussed and disapproved Travelers Indemnity Co. v. Wells, supra, citing Bryant v. State Farm Mutual Automobile Ins. Co., supra, as authority for the decision in Wells, and said:

"We hold, therefore, that the Illinois uninsured motorist statute does not prevent motorists from obtaining, or companies from issuing, uninsured motorist protection in excess of the minimum requirements of the statute."

The court then discussed the "other insurance" provision, which is identical with the provision contained in the policies now before this court, and, referring to the second paragraph of the "other insurance" provision, the court said:

"* * * This paragraph adds two conditions: First, the *damages*, which are not heretofore referred to, shall not exceed the higher of the applicable limits of the policies involved, and, second, the company shall not be liable for a greater proportion than the limits of its policy bear to the total insurance involved.

* * * * * *

"In the present case, if two different companies were involved, with an occupant of a non-owned automobile, where there are two $10,000.00 limits, 'he damages could not be taken to exceed $10,000.00. It is not the *pro rata* clause which limits the liability here. If it were not for the clause construing damages, the total limits of insurance would be $20,000.00 and the company issuing the policy with this clause would owe one-half."

In concluding, the court said:

"The judgment of the Circuit Court is reversed insofar as it declares that the uninsured motorist provisions of Policy No. 6315–281–A15–13A, issued on the 1960 Pontiac automobile owned by Marvin J. Deterding, deceased are not applicable, with directions to declare said policy provisions applicable to the amount of $10,000.00."

In LeBlanc v. Allstate Insurance Co., (La.App.1967) 194 So.2d 791, the court had consideration the identical "other insurance" provisions as are involved in the instant case. Following a reference to some provisions of the Louisiana statute that are not applicable in the instant case, the court said:

"The trial judge rendered judgment in favor of each plaintiff in the amount of $5,000.00, the policy limit for a single person under the uninsured motorist endorsement. The two insurance companies, State Farm Mutual and Allstate Insurance Company, have appealed, claiming that the distribution of the $10,000.00 fund deposited into the Registry of the court under the policy covering the automobile of Calvin Deshotel extinguished further liability under the LeBlanc and Courville policies, respectively."

* * * * * *

"By the 1960 amendment to LSA–R.S. 22:1406, the Legislature required all automobile liability insurance policies contain provisions for uninsured motorist coverage, unless rejected by the insured and again placed upon the Commissioner of Insurance the responsibility of approving the provisions of such uninsured motorist coverage."

The court, in considering the "other insurance" provisions of the policies involved, reviewed various decisions, including Burcham v. Farmers Insurance Exchange, (1963) 255 Iowa 69, 121 N.W. 2d 500, which the court finds as not applicable in the instant case.

The facts in the LeBlanc case were not disputed. On October 27, 1963, a vehicle owned and operated by Lawrence Pellerin collided with an automobile owned and operated by Calvin Lee Deshotel. LeRoy LeBlanc, the plaintiff, was a guest passenger in the Deshotel vehicle and was injured in the collision. Joseph Clifford Courville was also a passenger in the Deshotel automobile and was killed as a result of the collision between the two vehicles. The Pellerin automobile was uninsured, and at the trial it was established that the negligence of its driver was the sole proximate cause of the accident. State Farm was the insurer of the Deshotel vehicle, and it deposited the sum of $10,000, the limit of liability under the uninsured motorist provision of the policy, into the registry of the court to be distributed among the three claimants. In the distribution, the widow of Joseph Clifford Courville received $5,000, LeRoy LeBlanc $3,000, and Calvin Lee Deshotel $2,000. It was stipulated that the damages of

LeRoy LeBlanc and Marie Courville were each in excess of $10,000.

At the time of the collision LeRoy LeBlanc was insured by Allstate Insurance Company as a passenger in a non-owned automobile. Also, Joseph Courville was an insured under a policy issued by State Farm. LeRoy LeBlanc and the widow of Courville separately sued their insurers under the uninsured motorist coverage in the policies issued to each passenger. There was in force in Louisiana at the time of the accident a statute requiring that every automobile liability insurance policy issued in Louisiana contain coverage of not less than $5,000/$10,000 for the protection of persons insured thereunder who are legally entitled to recover damages from the owners and/or operators of uninsured motor vehicles.

The court, after considering all the facts and the provisions of the policies involved, said:

"Under the result which we have reached, LeBlanc can recover only a total of $5,000.00 from both insurers. As stated above, he had already received $3,000.00 from the primary insurer, State Farm. Hence, he is entitled to recover $2,000.00 from the defendant, Allstate, as excess insurer.

"For the reasons assigned, the judgment of the district court is amended by reducing the award to plaintiff from the sum of $5,000.00 to the sum of $2,000.00, and, as amended, is affirmed."

In disposing of the Courville case, Courville v. State Farm Mut. Auto. Ins. Co., La.App., 194 So.2d 797, the court held that for reasons assigned in the LeBlanc opinion, judgment was rendered in favor of State Farm Automobile Insurance Company and against Mrs. Courville.

After the exhaustion of the insurance under the Northwestern policy issued to the deceased O'Connell, there was no "other insurance" except that purchased by the plaintiff from the defendant, and the second paragraph of the "other insurance" clause is not applicable. As heretofore stated, the plaintiff Robey received from Northwestern the sum of $3,000 to apply on his bodily injuries and $1,000 to apply on his medical expenses. His medical expenses were $2,464.84. The defendant concedes that it is liable for the balance of the medical expenses, or $1,464.84, but contends this sum should be credited against the liability under the uninsured motorist provision. The liability of defendant was $10,000 under each policy. The medical payments are included in the total liability of $10,000.

■ It is firmly established that insurance policies are construed liberally in favor of the insured and strictly as against the insurer. The first policy on the 1963 Buick was issued August 27, 1965, at a cost to the plaintiff of $59.27. The second policy was issued two days later, August 29, 1965, on the 1961 International Scout at a cost to the plaintiff of $44.97. Had the second policy not been issued, the total liability of defendant under policy No. 103941, 1963 Buick, would have been $10,000 less the amount received by plaintiff as "similar insurance" under the Northwestern policy. Under the Northwestern policy the plaintiff received a total of $4,000, leaving a balance of $6,000 due under said policy No. 103941, 1963 Buick.

■ The defendant elected to issue the second policy, No. 109255, 1961 International Scout, with full knowledge that only two days before it had issued policy No. 103941, 1963 Buick. The two policies were identical except that the limit of medical expenses under the second policy was $2,000 while under the first policy it was $1,000. Under the provisions of the uninsured motorist statute of Arkansas, when applied to the facts, the court is of the opinion that the total liability of the defendant on the second policy is $10,000. There is no provision under the Arkansas law that prevents an insurance company from issuing as many policies to an insured as it may be able to sell, and such in-

sured is entitled to collect under the policies the full amount of injuries within the limits of the policies suffered by him proximately caused by the negligence of an uninsured motorist.

The "other insurance" provisions in the Safeco policies are not applicable with respect to each other. The contention of the defendant that its liability should be pro-rated between the two policies is invalid.

 The court has held that under the first policy, No. 103941, the plaintiff is entitled to recover only $6,000 for the reason that the Northwestern policy was within the provisions of the policy's "other insurance," while the second policy, No. 109255, 1961 International Scout, is not "other similar insurance," and the plaintiff is entitled to recover thereon the full limit of $10,000. Any other conclusion would limit the liability on multiple policies deliberately issued by insurers to one named insured, and as long as insurance companies choose to issue and deliver multiple policies containing an uninsured motorist clause in accordance with the provisions of the statute, such companies should be held liable for the full extent of the injuries suffered by the insured within the limits of the policies.

"While this situation may not have been considered in designing the policy, the defendant here saw fit to issue two separate policies on two separate automobiles owned by the plaintiff. Under these facts, clauses designed to prevent the paying of a disproportionate amount of a loss which is properly shared with another company should not be resolved against the insured." Deterding, supra, 222 N.E.2d p. 527.

The effect of the issuance of the second policy (covering the Scout) which also contained the uninsured motorist clauses was to provide Robey coverage of $20,000/$40,000 for uninsured motorist protection.

In the complaint the plaintiff prayed for the recovery of attorney's fee and 12 percent penalty, but not hav-

ing recovered the amount sued for, plaintiff is not entitled to recover any penalty or attorney's fee.

Therefore, for the reasons hereinbefore stated, judgment is being entered today for plaintiff, Dale L. Robey, against the defendant, Safeco Insurance Company of America, in the sum of $16,000.00, together with court costs and interest from this date.