Junior **CHILDERS**, Plaintiff,

v.

**SOUTHERN FARM BUREAU CASUAL-
TY INSURANCE CO. and M F A
Mutual Insurance Co.,** Defendants.

No. LR–66–C–259.

United States District Court
E. D. Arkansas, W. D.
April 9, 1968.

Comer Boyett, Jr., of Henry & Boyett, Searcy, Ark., for plaintiff.

Sam Laser, of Cockrill, Laser, McGehee, Sharp & Boswell, Little Rock, Ark., for Southern Farm Bureau Casualty Ins. Co.

Winslow Drummond, of Wright, Lindsey & Jennings, Little Rock, Ark., for MFA Mutual Ins. Co.

*Memorandum Opinion*

HENLEY, Chief Judge.

This diversity case, which has been submitted on an agreed statement of facts, involves the construction and validity of the "other insurance" provision appearing in the uninsured motorist endorsement on a policy of automobile insurance issued by defendant, Southern Farm Bureau Casualty Insur-

ance Co. (Southern Farm), to plaintiff, Junior Childers.

The policy in question provided "uninsured motorist" protection to Childers and members of his family, including his daughter, Cheryl Childers; the limits of the protection were $10,000 on account of injuries to or death of any one person and $20,000 on account of injuries or deaths resulting from any one accident. The policy extended protection to Cheryl Childers not only while she was an occupant of her father's car described in Southern Farm's policy but also while she was an occupant of a vehicle owned by someone else.

On February 27, 1965, while the policy was in force, Cheryl Childers, Forrest F. Noggle, and his son, Lanny Noggle, were riding in a car owned and operated by Forrest F. Noggle. They were involved in a serious accident due to the negligence of one Billy Wood, an uninsured motorist; Forrest F. Noggle and Billy Wood were killed as a result of the accident, and Cheryl Childers and Lanny Noggle were seriously injured.

At the time of the accident Forrest F. Noggle and Lanny Noggle had uninsured motorist protection under the terms of a policy issued to Forrest F. Noggle by MFA Mutual Insurance Co. (MFA), which company is also a defendant in this case. The coverage limits of that policy were the same as those expressed in Southern Farm's policy.

Cheryl Childers had protection under both policies which have been described but the protection of the estate of Forrest F. Noggle and of Lanny Noggle was limited to the MFA policy, and the amount of the protection available to the estate and to Lanny Noggle was limited to $20,000.

A suit on behalf of the Noggles was filed in this Court against MFA and was settled for $18,000, $2,000 less than the policy limits. Cheryl Childers was not a party to that suit and did not participate in the payment made by MFA.

After that suit was settled Junior Childers, individually and as next friend of Cheryl Childers, commenced this action against Southern Farm. It is noted that the same attorney who represented the Noggles in the first suit represents the plaintiff in this case.

Originally, plaintiff here sued Southern Farm only and demanded judgment in the sum of $10,000, plus statutory penalty and attorney's fee. Subsequently, MFA was brought into the case as an additional defendant.

MFA answered and in effect confessed judgment for $2,000, the difference between the $18,000 paid in connection with the first suit and the $20,000 single accident limit of its policy. By amendment to the complaint and by letters of counsel Mr. Childers has reduced his demand against Southern Farm so that the ultimate amount of his claim against that company is $5,000 plus statutory penalty and attorney's fee. Although counsel for Southern Farm has been made aware of the reductions in the demand of plaintiff, Southern Farm has not offered to confess judgment in any sum and insists that it owes nothing.

In denying liability Southern Farm relies solely on the following provision in its uninsured motorist endorsement:

"With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this endorsement, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant and this insurance shall then apply only *in the amount by which the applicable limit of this endorsement exceeds the sum of the applicable limits of liability of all such other insurance.*" (Emphasis added.)

The position of Southern Farm is that since the single person limit of its policy and the single person limit of the MFA policy were equal, that is to say the single person limit of each policy

was $10,000, the limit of Southern Farm did not "exceed the sum of the applicable limits of liability of all such other insurance."

It is not at all unusual for a passenger in an automobile to have insurance protection available under the driver's policy, which may afford primary coverage, and under his own policy, which may afford secondary coverage, and to sustain injuries due to the negligence of an uninsured motorist in excess of the protection available to him under the policy issued by the primary carrier. In such a situation the injured passenger is quite likely to seek additional compensation from his own insurance carrier, as has happened in this case.

The validity of the position assumed by Southern Farm has not yet been determined by the Supreme Court of Arkansas. The question has arisen in a number of other States and was before Senior Judge Miller in the Western District of Arkansas in Robey v. Safeco Insurance Co., W.D.Ark., 270 F.Supp. 473, which was decided on July 11, 1967.

In that case Safeco occupied the same position as is occupied by Southern Farm in this case, and the "other insurance" clause in the Safeco policy was substantially the same as the "other insurance" clause in Southern Farm's policy. In a full opinion Judge Miller reviewed conflicting authorities from other jurisdictions and reached a decision adverse to the position of Safeco, which had made the same argument as Southern Farm is making here.

In a pre-trial order entered late in December 1967 this Court advised counsel that it would be inclined to follow Judge Miller's decision to the extent that it might turn out to be in point even though the Court recognized that there is authority which would uphold Southern Farm's position.

Counsel for Southern Farm has filed a good brief in support of his client's position. Counsel argues, first, that Robey is distinguishable from this case; second, that the result reached in Robey

is not sound; and, third, that in any event the decision of the Supreme Court of Arkansas in Varvil v. MFA Mutual Insurance Co., 243 Ark. 692, 421 S.W. 2d 346, decided six months to the day after the decision in Robey, demonstrates that the Supreme Court of Arkansas would not reach the result arrived at by Judge Miller.

Counsel for plaintiff contends, on the other hand, that the Robey case is in point, and should be followed.

The contentions of the parties must be considered in the light of two relevant Arkansas statutes, Act 347 of 1953, Ark.Stats.Ann., § 75–1401 et seq., which is the Arkansas Motor Vehicle Safety Responsibility Act, and Act 464 of 1965, Ark.Stats.Ann., § 66–4003 et seq., which requires companies writing automobile insurance policies to offer protection against damages resulting from the negligence of uninsured motorists.

Ark.Stats., § 75–1427 permits the operator of a motor vehicle to establish financial responsibility by procuring liability insurance with limits of not less than $10,000 for the death of or injuries to one person and not less than $20,000 for death or injuries resulting from any one accident.

Ark.Stats., § 66–4003 provides that automobile insurers must offer uninsured motorist protection in amounts not less than the $10,000/$20,000 limits prescribed by § 75–1427.

Clearly, the basic purpose of Act 464 of 1965 was to enable Arkansas people purchasing automobile insurance to obtain for an additional premium the same protection against death or injuries at the hands of an uninsured motorist as they would have had if that motorist had obtained for himself the minimum insurance coverage required by the Safety Responsibility Act.

Proceeding on that premise, Southern Farm argues that there is nothing in the statute which prohibits an automobile insurer, providing secondary coverage to an insured riding with a driver covered primarily by a policy issued by

another company, to limit by means of the "other insurance" clause its own liability to the amount, if any, by which its own applicable policy limit exceeds the applicable limit of the policy issued by the primary carrier so that if the limit of the policy last mentioned is equal to or exceeds the limit of the secondary carrier's policy, there can be no recovery against the secondary carrier. In support of that argument the point is made that to hold otherwise would mean that a passenger within the protection of two policies might be entitled to larger insurance compensation if injured by an uninsured motorist than would have been available had the tortfeasor carried the minimum amount of insurance prescribed by the Safety Responsibility Act; such a result is said to be undesirable.

As indicated, there are authorities which support that argument, but Judge Miller refused to follow those authorities in the Robey case and concluded that to so hold would be violative of Ark. Stats., § 66–4003.

The Court cannot accept the argument that Varvil v. MFA Mutual Insurance Co., supra, has rendered the Robey decision obsolete. While *Varvil* certainly supports Southern Farm's argument as to what its "other insurance" clause *means*, a matter about which there can be little dispute, that case did not involve uninsured motorist coverage and no question was presented as to any conflict between a policy provision and a State statute.

There is much to be said in favor of Southern Farm's contention that to construe and apply its "other insurance" clause as Southern Farm would have it construed and applied would not violate section 66–4003, but, rather, would be in harmony with the underlying purpose of the statute.

If the question were one of first impression, it is possible that this Court, writing on a clean slate, would not resolve it in the manner as did Judge Miller. On the other hand, Judge Miller's decision is entitled to weight, and the Court certainly cannot say that it is clearly wrong.

■ Federal courts in this State frequently find it necessary to decide important questions of Arkansas law upon which the Arkansas Supreme Court has not passed. In the interest of uniformity of decision, if nothing else, this Court thinks that when one of the federal judges sitting in this State decides one of those questions after thorough consideration, the other judges ordinarily should follow his decision until the Courts of Arkansas authoritatively decide the question the other way.

■ Hence, the Court adheres to its inclination to follow the Robey decision and will do so unless convinced by Southern Farm's argument that this case is distinguishable from *Robey,* and that the distinction dictates or at least justifies a contrary decision here.

The distinction which Southern Farm would draw is based upon the fact that Robey, the injured passenger, joined with the representatives of the driver and another passenger, both of whom were killed in the accident, in bringing suit against the driver's primary carrier; that they recovered a judgment against that carrier in excess of policy limits which were prorated among the plaintiffs including Robey, and that it was only then that Robey proceeded against his own company. See Robey v. Northwestern Security Insurance Co., W.D.Ark., 270 F.Supp. 466. Counsel points out that in this case Cheryl Childers and her father did not join with the Noggles in their suit against MFA, and that their failure to do so and so to participate in the proceeds of the MFA policy has been prejudicial to Southern Farm.

To put the argument in different terms, Southern Farm contends, as the Court understands it, that where an uninsured motorist inflicts injuries upon several parties compensation for which would probably exceed the overall policy limits of the primary carrier, a passenger having secondary coverage not

available to the other injured persons may not stand by and permit the other persons to exhaust or substantially exhaust the primary coverage and later bring a suit against his or her own secondary carrier.

No authority is cited in support of that argument, and the Court is not willing to accept it. To do so would impose on a passenger, situated as was Cheryl Childers, the duty of mitigating the secondary carrier's liability not at the expense of the primary carrier but at the expense of the driver and other passengers. The Court does not think that any such duty exists. Nor does the Court think that the course taken in this litigation with respect to Cheryl Childers has legally prejudiced Southern Farm. Had Cheryl Childers been riding with an uninsured motorist, Southern Farm would have been liable up to the full $10,000 policy limit, less medical payments. As it is, Southern Farm is obtaining the benefit of what is left of the primary coverage, and is also being credited with a payment made by MFA for the benefit of Cheryl Childers under the medical payments coverage of the MFA policy.

■ The view which the Court takes that the right of plaintiff to recover against Southern Farm is not affected by the fact that Cheryl Childers failed to participate in the original action against MFA finds support in Travelers Indemnity Co. v. Wells, W.D.Va., 209 F.Supp. 784. In that case an automobile occupied by a number of persons related to each other was involved in a collision with a car being driven by an uninsured motorist. All of the occupants were covered by a policy providing primary coverage up to Virginia's statutory limits of $15,000 and $30,000. Two of the occupants had secondary coverage with the same limits. The deaths and injuries resulting from the accident involved damages far in excess of $30,000. One of the injured persons, who was also the administrator of the estate of one of the people who was killed, filed two suits against the uninsured motorist in the State court and recovered judgments totalling $30,000. The primary carrier immediately paid those judgments but took releases from all of the occupants of the car and representatives of deceased occupants; the money paid out by the primary carrier was retained by the plaintiff in the suit against the uninsured motorist. Thereafter Wells, who had executed a release in favor of the primary carrier and who had received none of the proceeds of that carrier's insurance, filed suit against his own secondary carrier. The District Court allowed recovery. While the decision of the District Court was reversed by the Court of Appeals, Travelers Indemnity Co. v. Wells, 4 Cir., 316 F.2d 770, the reversal was not based on the fact that the appellee had not proceeded against the primary carrier. The Court of Appeals took the broader position that since the limits of the two policies were the same, there was no secondary coverage. In coming to that conclusion, which defendant urges this Court to do in this case, the Court of Appeals made what turned out to be an inaccurate forecast of Virginia law since the contrary result was later reached in Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 140 S.E.2d 817; see also White v. Nationwide Mutual Insurance Co., 4 Cir., 361 F.2d 785.

Judgment will be entered as by confession against MFA in the amount of $2,000 with no award of any penalty, costs or attorney's fee.

Judgment will be entered against Southern Farm in the principal sum of $5,000, plus a $600 penalty and an attorney's fee of $800. Costs will be taxed against Southern Farm.