Elvin B. WOOLSTON and Carol Woolston, Surviving parents and heirs at law of Jennifer Woolston, Deceased; and Elvin B. Woolston and Carol Woolston, Individually, Plaintiffs,

v.

STATE FARM MUTUAL INSURANCE COMPANY, Defendant.

No. H–69–C–10.

United States District Court
W. D. Arkansas,
Harrison Division.

Dec. 1, 1969.

Donald J. Adams, of Fitton, Meadows & Adams, Walker & Campbell, Harrison, Ark., for plaintiffs.

Crouch, Blair, Cypert & Waters, Springdale, Ark., for defendant.

Memorandum and Order

HENLEY, District Judge.

This diversity case has been brought by Elvin B. Woolston and Carol Woolston as the surviving parents and sole heirs at law of their minor child, Jennifer Woolston, deceased, against State Farm Mutual Insurance Co. Plaintiffs seek to recover under the uninsured motorist endorsements appearing as parts of two automobile insurance policies issued by the defendant. One of the policies was issued to Mr. Woolston, and the other was issued to both Mr. and Mrs. Woolston; the uninsured motorist limits in each policy were $10,000 and $20,000. Jennifer Woolston was an omnibus insured under both policies.

On October 31, 1968, while the policies were in force, Jennifer Woolston while on foot was struck and fatally injured by an automobile operated by Rita Smothers. The child lived from October 31 to November 3, 1968, during which time medical and hospital expenses were paid or incurred in connection with her treatment and attempted cure. The in-

surance company made payments on account of those expenses to the extent of $2,383.76 under the medical payments coverage of one or both policies. However, the insurance company has consistently refused to pay anything on account of the injuries to and death of the child.

Plaintiffs commenced this action in the Circuit Court of Boone County, and it was timely removed to this Court. The complaint alleges the existence of the policies, their effectiveness at the time of the accident, the happening of the accident, and the injuries to and death of the child. It is further alleged that the accident was proximately caused by negligence on the part of Rita Smothers, and that Rita Smothers was an uninsured motorist at the time of the accident. Plaintiffs pray judgment against the defendant in the sum of $200,000 plus a statutory penalty and attorney's fee.

In its answer the defendant admits the happening of the accident and the death of Jennifer Woolston and also admits that she was entitled to protection under the policies issued to her parents. The defendant pleads ignorance as to whether Rita Smothers was an uninsured motorist; denies that Rita Smothers was guilty of negligence; and pleads that the accident was due in whole or in part to the negligence of the child in darting into the road in front of the Smothers car.

The defendant also pleads the "anti-stacking" provisions appearing in the uninsured motorist endorsement of each policy and asserts that if it is liable to the plaintiffs in any sum, which it denies, its liability is limited to a single policy limit of $10,000 less medical payments of $2,383.76.

On October 8 of the current year counsel for plaintiffs filed a motion to strike the allegations of the answer abstracted in the preceding paragraph. On October 14 the Court overruled the motion without prejudice, and later set the case for jury trial on the factual issues presented by the pleadings.

On October 28 the defendant filed a motion, denominated a "Motion For Summary Judgment." That motion is based on the "anti-stacking" provisions of the policies, and defendant asserts that the claim of plaintiffs does not, as a matter of law, exceed $7,616.24. The prayer of the motion is that the Court enter an order dismissing plaintiffs' complaint as to any amount in excess of $7,616.24 and reducing the prayer of the complaint to that amount.

■ Upon the filing of the motion the Court noted a possible jurisdictional problem involving amount in controversy and removed the case from the trial docket. However, further consideration of the record and of the letter-response of plaintiffs to the motion convinces the Court that jurisdiction exists. Plaintiffs have now abandoned their $200,000 claim, which never had any legal basis, and are demanding $17,616.24, the total of the single limits of both policies less medical payments, plus statutory penalty and fee. Thus, their demand is for substantially more than $10,000. That they may not be entitled to recover more than $10,000 does not in itself deprive the Court of jurisdiction. See the very recent opinion of the Court of Appeals in Zunamon v. Brown, 8 Cir., 418 F.2d 883, decided on November 13 of the current year, in which opinion the determination of jurisdictional amount is discussed in some detail.

The policies contain the following "anti-stacking" provisions:

"With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this coverage, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance.

"Subject to the foregoing paragraph, if the insured has other similar

insurance available to him against a loss covered by this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this coverage for a greater proportion of the applicable limit of liability of this coverage than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Assuming that one or both of those paragraphs are applicable to the accident involved in this case, it is clear that defendant is correct in its contention that the limit of its principal obligation is $10,000, less medical payments, and that plaintiffs are not entitled to another $10,000.

The question presented by the motion is whether the provisions relied on by defendant apply to a situation where an insured is injured or killed while a pedestrian and at a time when he or she is covered by two policies issued by the same company. The question is a novel one, at least in Arkansas.

## I.

In 1965 the Arkansas Legislature by Act 464 of that year, Ark.Stats.Ann. § 66–4003, required automobile liability insurers to offer uninsured motorist protection to all insureds in amounts not less than $10,000/$20,000 limits required by the Arkansas Motor Vehicle Safety Responsibility Act, Act 347 of 1953, Ark.Stats.Ann. § 75–1401 et seq.

The purpose of the requirement of the 1965 statute is to give to individuals the same protection if injured by the negligence of uninsured drivers that they would have had if the drivers had carried the minimum liability insurance referred to in the 1953 statute. MFA Mutual Insurance Co. v. Wallace, 245 Ark. 227, 431 S.W.2d 742.

It is not unusual for a passenger in an automobile who sustains an injury at the hands of an uninsured motorist to be covered by his own policy of insurance as well as by the policy of the driver; and if both policies provide uninsured motorist protection, and if the injured passenger can collect under both policies he may conceivably recover more than

he could have recovered had the "other driver" carried liability insurance with minimum limits.

While the Arkansas statute does not limit uninsured motorist protection to $10,000/$20,000, uninsured motorist endorsements are generally, if not invariably, so limited in this State, and the insurance companies have consistently undertaken to protect themselves against the stacking of benefits in the case of double coverage.

The question of the validity of "anti-stacking" provisions in uninsured motorist endorsements came before the federal courts in Arkansas and before the Court of Appeals for this Circuit before it was decided by the Supreme Court of Arkansas. The federal courts held the provisions invalid. Robey v. Safeco Ins. Co. of America, W.D.Ark., 270 F.Supp. 473, aff'd 8 Cir., 399 F.2d 330; Childers v. Southern Farm Bureau Casualty Ins. Co., E.D.Ark., 282 F.Supp. 866.

However, on September 23, 1968, the Supreme Court of Arkansas reached a contrary result in *Wallace,* supra. In the Wallace case, as here, both policies had been issued by the same company and to the same insured.

In Treece v. The Home Insurance Co., E.D.Ark., 295 F.Supp. 262, the argument was made to this Court that *Wallace* is inapplicable where two insurance companies are involved. The Court rejected that argument predicting "that it would make no difference to the Supreme Court of Arkansas whether the plaintiff was covered by two policies issued by the same company or by two policies issued by different companies." 295 F.Supp. at 263.

Before leaving *Treece* the Court would call attention to a textual error appearing in the next to the last paragraph of the opinion, 295 F.Supp. at 263. The paragraph in question is a follows:

"In any event this Court has in fact held that *Wallace* does not apply to the situation presented here and will adhere to its holding until a contrary conclusion is reached by the Supreme Court of Arkansas or by the Court of Appeals."

The word "not" should not have been in the paragraph in question. Both in *Treece* and in unpublished opinions the Court has held that *Wallace* does apply

to the situation presented in *Treece*. The paragraph under discussion should have read:

"In any event this Court has in fact held that *Wallace* does apply to the situation presented here and will adhere to its holding until a contrary conclusion is reached by the Supreme Court of Arkansas or by the Court of Appeals."

## II.

Plaintiffs would distinguish this case from *Wallace* on the basis that Jennifer Woolston was a pedestrian when she was injured whereas the deceased in that case was riding in an automobile when she received her injuries.[1]

The Court does not understand that counsel for plaintiffs goes so far as to contend that an automobile insurer cannot protect itself from the stacking of coverage in the case of an insured pedestrian while permitted to do so in the case of an insured riding in an automobile at the time of injury or death. There would be no rational basis for such a distinction.

On the other hand, it is evident that the first of the two paragraphs of the anti-stacking provisions of the policies are not applicable here since they are expressly limited to a situation in which the insured is riding in a car, a situation that does not exist here.

In the last analysis, therefore, defendant must rely on the second of the two paragraphs in question which may be referred to as the "other insurance clause" appearing in each policy. Since the policies were prepared by the defendant, and since the paragraphs relied on by defendant limit coverage, they must be construed most strongly against the defendant to the extent, if any, that they are ambiguous. State Farm Mutual Automobile Insurance Co. v. Pennington, E.D.Ark., 215 F.Supp. 784, 789, and Arkansas cases there cited.

Automobile insurance policy provisions dealing with other insurance are discussed in 7 Am.Jur.2d, Automobile Insurance, §§ 200–202; see also Annotation in 21 A.L.R.2d 611 and cases collected in A.L.R.2d Later Case Service. Generally speaking, it may be said that there are three types of "other insurance clauses" that conventionally appear in such policies. One type of clause prohibits "other insurance," and the policy is void if there is other insurance. Another type provides that if there is other insurance the coverage provided by the policy in question is "excess coverage" only. The third type provides that if there is other insurance a loss is to be prorated between or among the insurers.

The "other insurance clauses" in defendant's policies that are now under consideration contain a standard provision for proration, but they do more than that, they limit the amount of total recovery to the limit of each of defendant's policies or to the limit of the "other insurance," whichever is higher. Here, of course, the limits of defendant's two policies are the same so that if the defendant's position is sound, plaintiffs' maximum "damages is the sum of $10,000 (less medical payments).

Defendant's "other insurance clauses" would give the Court no trouble in a situation involving two or more insurance companies. But the Court has considerable difficulty in this case because here only one insurance company is involved. And the Court must determine whether as far as each policy is concerned, the other policy issued by the defendant is "other insurance."

That problem was not before the Court in the Wallace case, supra, because the "other insurance clause" in that case specifically referred to other insurance issued to the named insured or his spouse "by the Company." And the same thing may be said about the "other insurance clause" involved in Varvil v. MFA Mutual Insurance Co., 243 Ark. 692, 421 S.W.2d 346.

In a context other than uninsured motorist coverage, an insured is entitled to recover his total loss up to the limits of all available, valid coverage, and the loss is then prorated between or among his insurers on the basis of the proportion

---

1. The distinction is probably factually valid although the opinion of the Court in *Wallace* does not give the details of the accident or describe the manner in which the deceased met her death except to say that it was the result of negligence on the part of an uninsured motorist.

of the insurance provided by each to the total coverage provided by both or all. In such a case if the insured has two policies issued by the same company there is no practical point in the company prorating the loss between its two policies; it simply pays the loss up to the limits of both policies. Thus, in the conventional situation the "other insurance clause" in a particular policy ordinarily assumes the existence of other insurance issued by another insurance company.

As has been pointed out, however, defendant's policy provisions seek not only to prorate the loss but also to fix the limit thereof; and the defendant seeks to limit its liability under each of its policies by reference to the limits of its other policy on the theory that the other policy is "other insurance."

It has been mentioned that the policies involved in *Wallace* and *Varvil* specifically referred to other insurance issued by the same insurer. No such specific reference appears in the policies in suit, nor was there such a reference in the Safeco policies involved in *Robey*, supra.

In the case last cited Judge Miller had this to say (270 F.Supp. pp. 486–487):

"It is firmly established that insurance policies are construed liberally in favor of the insured and strictly as against the insurer. The first policy * * * was issued August 27, 1965, at a cost to the plaintiff of $59.27. The second policy was issued two days later, August 29, 1965 * * * at a cost to the plaintiff of $44.97. Had the second policy not been issued, the total liability under (the first policy) would have been $10,000, less the amount received by plaintiff as 'similar insurance' under the Northwestern policy. * * *

"The defendant elected to issue the second policy * * * with full knowledge that only two days before it had issued (the first policy). The two policies were identical (with an unimportant exception). Under the provisions of the uninsured motorist statute of Arkansas, when applied to the facts, the court is of the opinion that the total liability of the defendant on the second policy is $10,000. There is no provision under the Arkansas law that prevents an insurance company from issuing as many policies to an insured as it may be able to sell, and such insured is entitled to collect under the policies the full amount of injuries within the limits of the policies suffered by him proximately caused by the negligence of an uninsured motorist.

"The 'other insurance' provisions in the Safeco policies are not applicable with respect to each other. The contention of the defendant that its liability should be prorated between the two policies is invalid."

In view of the fact that the policy language before the Arkansas Supreme Court in *Wallace* and *Varvil* was different from the policy language involved in *Robey*, the Court does not consider that either of those two Arkansas decisions impairs the *Robey* holding to the extent that it limits the "other insurance clause" appearing in a uninsured motorist endorsement to a situation involving two insurance companies, and that such clause does not apply where two policies in identical amounts have been issued by the same company.

Apart from any weight to be given *Robey* as a precedent, the Court is of the opinion that the "other insurance clause" involved in this case is at best ambiguous in a situation involving the issuance of two policies by the same company, and that it must be construed most strongly in favor of the plaintiffs.

And, the Court now holds that defendant's maximum principal exposure in this case is $17,616.24. In his response to the defendant's motion counsel for plaintiffs stated that if the Court holds, as it has done, that plaintiffs' maximum principal recovery is $17,616.24, plaintiffs will desire to file a formal amendment to their complaint seeking judgment in that sum, plus penalty and fee. Leave to amend within the next ten days is now granted.

Defendant's motion for summary judgment is denied.