**Bobby DUGAL, Administrator of the Estate of Amy Coleen Dugal, Deceased, Plaintiff,**

v.

**COMMERCIAL STANDARD INSURANCE COMPANY, Defendant.**

**No. ED–76–43–C.**

United States District Court,
W. D. Arkansas,
El Dorado Division.

Aug. 11, 1978.

Robert C. Compton, Brown, Compton & Prewett, El Dorado, Ark., for plaintiff.

William L. Peek, Jr., Hubbard, Patton, Peek, Halton & Roberts, Texarkana, Tex., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

This a diversity action by the administrator of the estate of a "named insured" seeking to recover under the provisions of uninsured motorist coverage contained in a policy of insurance written by defendant. The issues presented by the pleadings are (1) the liability of the driver of the vehicle which struck the vehicle upon which plaintiff's decedent was riding, (2) the amount of damages, (3) whether the driver of the vehicle which struck the vehicle upon which plaintiff's decedent was riding was an uninsured motorist, and (4) the amount of coverage afforded to plaintiff under the policy of insurance involved.

Pursuant to pre-trial conference and regular setting, this cause was tried to the Court, without the intervention of a jury, by agreement of the parties and waiver of right to trial by jury, on February 15, 1978. Evidence was heard and received, including a substantial stipulation of facts by the parties, both parties rested, and counsel were afforded a substantial time within which to file briefs as to their respective contentions. All briefs have now been received and the cause submitted for determination.

From the pleadings, the evidence, exhibits, stipulations and in consideration of the briefs and argument of counsel the Court

makes the following findings of fact and conclusions of law, pursuant to Rule 52, Federal Rules of Civil Procedure:

Plaintiff is the duly appointed, qualified and acting administrator of the estate of Amy Coleen Dugal, deceased. Amy was a resident of Union County, Arkansas at the time of her death and the administration is being conducted in the Probate Court of Union County. Plaintiff is a resident of Union County, Arkansas and defendant is a corporate entity organized under the laws of a state other than Arkansas with its principal place of business in the State of Texas.

■ The claim of plaintiff against defendant alleges that plaintiff is entitled to recovery of the sum of $60,000.00, exclusive of costs, penalty and interest. Although one construction of the policy would result in a maximum liability under the policy of $5,000.00, the fact that the recovery might be in an amount less than $10,000.00 does not in itself deprive this Court of jurisdiction, so long as the amount claimed in the complaint is in good faith and there is some possibility of recovery of the jurisdictional amount. See *Woolston v. State Farm Mutual Ins. Co.,* 306 F.Supp. 738 (W.D.Ark. 1969); *Zunamon v. Brown,* 418 F.2d 883 (8th Cir. 1969).

The Court, therefore, concludes that it has jurisdiction over the parties and this cause of action pursuant to 28 U.S.C. § 1332.

■ It is stipulated and uncontroverted that on October 17, 1974, Amy Coleen Dugal, who was two years of age, was riding as a passenger on a farm tractor being driven by her grandfather, G. P. Dugal. The tractor was being driven in a northerly direction on the Aurelle Road, approaching the residence and driveway of G. P. Dugal, some four miles South of Strong, Arkansas. The tractor was travelling at a very slow speed and had commenced a left turn into the G. P. Dugal driveway.

At the same time, a 1974 Chevrolet Chevelle automobile owned by Lee Hicks and being driven by David Hicks approached the G. P. Dugal residence in a southerly direction on the Aurelle Road. The automobile was being driven at a high and excessive rate of speed and the driver, David Hicks, was not keeping a proper lookout for other vehicles, as required by the Rules of the Road, Ark.Stats.Ann. § 75–601(a).

When David Hicks did observe the tractor crossing his lane of travel, he applied the brakes of the automobile and locked the wheels, leaving some 175 feet of skid marks. The automobile struck the tractor on the west shoulder of the road, off the paved portion. The tractor partially turned over on its left side, crushing Amy under its wheel, resulting in her death.

The Court finds and concludes that David Hicks was guilty of negligence which was a proximate cause of the collision and the resulting injury to and death of Amy Coleen Dugal in driving the Chevrolet automobile at a high and excessive rate of speed, too fast for the circumstances then existing; in failing to keep a proper lookout for other vehicles upon the highway; and in failing to keep the vehicle under proper control. Any negligence on the part of G. P. Dugal would not be chargeable to Amy or plaintiff. The Court, therefore, finds and concludes that plaintiff is legally entitled to recover damages from David Hicks arising out of Amy's injury and death.

■ From the evidence the Court finds and concludes that the circumstances of the injuries to Amy were such that she was rendered unconscious almost instantly, that she took only one or two breaths after she was pinned under the tractor, and that her death was not preceded by conscious pain and suffering or mental anguish. Plaintiff is, therefore, not entitled to recover damages on that account.

Amy was only some two years of age, and it is not contended that her survivors or estate have lost any earnings or earning capacity by reason of her death. Although funeral expenses were prayed for in the complaint, these have been provided by other provisions of a policy of insurance which

was applicable, and no recovery for such expenses is sought.

■ Under the Arkansas Wrongful Death Act, Ark.Stats.Ann. § 27–909, plaintiff, as administrator, may recover on behalf of the father, mother and brothers of the deceased for their own mental anguish occasioned by the death, provided that such survivors suffer more than normal grief. In determining the extent and compensability of mental anguish, the closeness of the relationship of the survivors with the deceased, the probable life expectancy of the deceased and survivors, the nature of the death, the physical and mental impact on the survivors and other circumstances indicating the existence of and the degree of such mental anguish are considered.

■ From all of the evidence the Court finds and concludes that Bobby Dugal, the father of Amy, and Vickie Dugal, the mother, have undoubtedly endured and suffered more than the normal grief occasioned by the loss of a loved one. Their anguish was apparent in their demeanor, as well as the words of the testimony. The Court finds that plaintiff is entitled to recover damages on behalf of Bobby Dugal in the amount of $25,000.00 and on behalf of Vickie Dugal in the amount of $35,000.00. These amounts are determined to be fair and reasonable compensation for the mental anguish sustained by the parents of an infant daughter, *Tiner v. Tiner*, 238 Ark. 222, 379 S.W.2d 425. Although the brothers undoubtedly did suffer mental anguish, there is not sufficient evidence to support an award on their behalf, and their damages were not plead.

It is stipulated by the parties that there was in force at the time of the occurrence a policy of automobile insurance issued by defendant to Bobby Dugal. The policy contained a provision that defendant would pay such sum as " . . . the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . including death . . . caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; . . . ". This is commonly known as "uninsured motorist" coverage, and is required by law in Arkansas to be a part of each policy of automobile liability insurance written in this State, unless expressly declined by the insured, Ark.Stats.Ann. § 66–4003.

It is stipulated that David Hicks was an uninsured motorist and that he was the operator of an uninsured automobile at the time of the collision. The Court has concluded that plaintiff is legally entitled to recover the total sum of $60,000.00 as damages arising out of the use of an uninsured automobile and caused by the accident, which damages were proximately caused by negligence of an uninsured motorist.

■ It is further stipulated that there was "other insurance" within the meaning of the policy exclusion contained in the second paragraph of Condition 7 of the Family Protection Coverage section of the policy. Such other insurance was afforded by Northwestern National Insurance Company, under an uninsured motorist provision, which company has tendered to plaintiff the sum of $5,000.00, the limits of its liability under the terms of its policy. This amount should be credited toward payment of plaintiff's damages herein.

The policy issued by defendant insured twelve automobiles and it is stipulated that the policy recites that the premium charged for the uninsured motorist coverage for the twelve separate motor vehicles was $61.00, calculated by charging $6.00 on the first vehicle and $5.00 each on the next eleven vehicles.

Under the schedule of the policy, the limits of liability under the uninsured motorist coverage is fixed at $10,000.00 for each person injured or killed under circumstances which would invoke this coverage provision. The "other insurance" condition, as referred to, would reduce this limit to the sum of $5,000.00.

It is the contention of plaintiff that the policy of insurance should be construed, under the applicable law of the State of Ar-

kansas, so as to afford twelve uninsured motorist coverages of $5,000.00 each, providing a total of $60,000.00 available to plaintiff. This accumulation of coverages is referred to as "stacking". Defendant contends that the coverage is limited to $5,000.00 under the provisions of the policy, and that "stacking" is not warranted under the applicable law and the policy language.

This being a diversity action, the Court is constrained to follow the law of the State of Arkansas. The parties state in their briefs that the law of Arkansas is somewhat unsettled with regard to uninsured motorist insurance provisions, and do not cite or discuss the Arkansas authorities. The Court has reviewed the decisions by the Arkansas Supreme Court and the Federal Courts sitting in Arkansas for such guidance as might be found therein.

The first case discovered bearing on the issue is the decision of the Court of Appeals for the Eighth Circuit in *Safeco Insurance Company of America v. Robey*, 399 F.2d 330 (1968), affirming a decision by Judge Miller, reported at 270 F.Supp. 473. Robey was injured while a passenger in a nonowned automobile in a collision proximately caused by the negligence of an uninsured motorist. The owner of the vehicle in which he was a passenger had a policy of insurance containing an uninsured motorist provision, and Robey had two liability policies issued by Safeco to him covering two separate automobiles, each providing for uninsured motorist coverage. The coverage in each of the three policies was limited to $10,000 per person, $20,000 per accident. The insuror of the non-owned vehicle paid its limits of $20,000, apportioned among the three occupants, Robey receiving $3,000.

Robey then commenced his action against Safeco, claiming entitlement to $10,000 under each of the two policies' coverage under the uninsured motorist clause. Safeco contended that the "other insurance" provision of its contracts precluded any liability under uninsured motorist coverage of either of its two policies issued to Robey.

The "other insurance" clause of the Safeco policies provided:

"Other Insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Uninsured Motorists shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and SAFECO shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Both Judge Miller and the Court of Appeals held that the other insurance provisions of the Safeco policy were not to be given effect to negate coverage to Robey. Credit was given for the amount actually received from the other insuror as to one of the Safeco policies and the full $10,000 was found to be owed on the other. Relying upon *Kansas City Fire & Marine Insurance Co. v. Epperson*, 234 Ark. 1100, 356 S.W.2d 613 (1962), the Court of Appeals stated that "when the same insurer issued multiple policies the coverage is the total amount of both policies and actual damages are recoverable to the full extent of the limits of both policies."

Shortly following the *Robey* decision, the Supreme Court of Arkansas decided the case of *M.F.A. Mutual Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968). MFA had issued two automobile liability policies to Wallace, each containing uninsured motorist coverage of $10,000 per person. Mary Ann Wallace, an insured under the policies, was injured in a non-owned, uninsured automobile, resulting in her death.

MFA paid $10,000 on one policy and denied liability on the other, on the basis of the "other insurance" clause of the policies. The clause as contained in the MFA policies was as follows:

"5. Other Automobile Insurance *in the Company*—With respect to any occurrence, accident, death or loss to which this and any other automobile insurance policy issued to the named insured or spouse *by the Company* also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one policy."

The Arkansas Supreme Court held:

"The cases interpreting uninsured motorist statutes go both ways on the issue of stacking multiple policies covering the same accident or injury. *Safeco Insurance Company v. Robey*, 399 F.2d 330 (8th Cir. 1968). However, in looking at the terms and purpose of our statute, we find that the 'other insurance clause' is not repugnant to Ark.Stat.Ann. § 66–4003, supra. Here MFA furnished uninsured motorist coverage 'in not less than limits described * * *' in the Safety Responsibility act. Furthermore, since the purpose of the statute is 'for the protection of persons insured * * * who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *.' It is obvious that the statute was not designed to provide the insured with greater insurance protection than would have been available had the insured been injured by an operator with a policy containing the minimum statutory limits required by the Motor Vehicle Safety Responsibility Act, Ark.Stat.Ann. § 75–1427 (Supp.1967). See *Maryland Casualty Company v. Howe*, 106 N.H. 422, 213 A.2d 420 (1965)."

The United States District Court for the Eastern District of Arkansas, Chief Judge Henley, in *Treece v. Home Insurance Company*, 295 F.Supp. 262 (1969), followed *Wallace* in holding that the "other insurance" clause required the deduction of any amounts paid by the insurer of a non-owned

automobile under its "primary" coverage to be deducted from, or to avoid liability on the "excess" coverage provided by the insurer of the injured party under his own uninsured motorist coverage.

In *Boehler v. I.N.A.*, 290 F.Supp. 867 (E.D.Ark.1968), Judge Henley had before him a case involving the precise situation involved herein, but INA had confessed judgment for a total of $19,000 under the uninsured motorist policy on two automobiles, so the question never arose for decision.

In *Simpson v. State Farm Mutual Automobile Insurance Co.*, 318 F.Supp. 1152 (S.D.Ind.1970), Judge Dillin examines and analyzes the cases then existing with regard to "stacking" of uninsured motorist coverages and the validity of the "other insurance" clauses. This analysis is of benefit and relevant to a determination of Arkansas law by reason of its examination of the case of *Maryland Casualty Co. v. Howe*, supra, relied upon as the sole authority for the *Wallace* decision of the Arkansas Supreme Court.

Judge Dillin points out that *Howe* relied upon *Burcham v. Farmers Insurance Exchange*, 255 Iowa 69, 121 N.W.2d 500 (1963), and *Travelers Indemnity Co. v. Wells*, 316 F.2d 770 (4th Cir. 1963). It is pointed out that the *Burcham* case could not support a determination of the effect of a statute requiring the inclusion of uninsured motorist coverage, as the Iowa statute to that effect was not enacted until some four years after the case was decided. The *Wells* decision purported to determine the law of Virginia, but a subsequent decision of the Supreme Court of Virginia specifically disapproved of the decision and determined that the statute precluded the "other insurance" clause from preventing stacking of coverages. It was the opinion of Judge Dillin that the underpinning of *Howe* had been totally undermined. He dismissed Arkansas' *Wallace* case as devoid of precedential value due to the weakness of the only case relied upon therein, *Howe*.

Judge Dillin stated that—"The actual weight of authority favors the plaintiffs'

position that an insured in a state having an uninsured motorist statute similar to the Indiana statute [and the Arkansas statute is quite similar] is entitled to payment in full, up to the policy limit, with respect to each policy under which coverage is afforded, and that 'other insurance' clauses and similar clauses which purport to limit liability, such as clauses providing for a deduction as to amounts paid under medical payments provisions of the policy, are void as being in conflict with the statute." He stated that the minority view is represented in *Wallace.*

In *Woolston v. State Farm Mutual Ins. Co.,* 306 F.Supp. 738 (W.D.Ark.1969), Judge Henley again was called upon to determine whether "stacking" of uninsured motorist coverages is permitted under Arkansas law. Two separate policies of automobile liability insurance had been issued by State Farm, one to Mr. Woolston, one to Mr. Woolston and his wife. Their daughter was killed when struck by an uninsured motorist. At the time of her injury, the daughter was a pedestrian. The company paid under the medical payments provision, but denied any liability under uninsured motorist coverage. State Farm further asserted that, if it was liable under that coverage, liability was limited to $10,000 under the "anti-stacking" provisions of the policies, which were:

"With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this coverage, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance.

"Subject to the foregoing paragraph, if the insured has other similar insurance available to him against a loss covered by this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this

coverage for a greater proportion of the applicable limit of liability of this coverage than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Judge Henley stated that, if the "other insurance" paragraphs are applicable, it is clear that plaintiffs are entitled to only one coverage of $10,000, less amounts paid under medical payments coverage, and not to the other $10,000. He analyzed the question involved as whether, as far as each of the two State Farm policies was concerned, the other such policy should be considered "other insurance" within the meaning of the "other insurance" clause. He stated that the problem was not involved in *Wallace* because the "other insurance" clause in that case specifically referred to other insurance issued to the named insured or his spouse *by the company.*

In *Woolston,* State Farm sought to limit its liability under the theory that each of its own policies was "other insurance" as to the other. Judge Henley quoted with approval the language of Judge Miller in *Robey,* 270 F.Supp. 486-7, that there is no provision under Arkansas law preventing an insurance company from issuing as many policies to an insured as it may be able to sell, and the insured is entitled to collect under the policies the full amount of injuries within the limits of the policies, and that the "other insurance" provisions are not applicable with respect to each other.

Additionally, apart from consideration of the *Robey* case, he found that the "other insurance" clause as contained in the State Farm policies was ambiguous in a situation involving the issuance of two policies *by the same company,* and that it must be construed against the company which prepared it, citing *State Farm Mutual Automobile Ins. Co. v. Pennington,* 215 F.Supp. 784, 789 (E.D.Ark.): He, therefore, held that the "other insurance" clauses there involved did not prevent "stacking" of the uninsured motorist coverages.

In *Heiss v. Aetna Cas. & Surety Co.,* 250 Ark. 474, 465 S.W.2d 699 (1971), the Arkan-

sas Supreme Court held that the provisions of an automobile liability policy providing that amounts payable under "medical payments" coverages should be deducted from amounts payable under uninsured motorists coverage is void as in derogation of the requirements of the provisions of Ark.Stats. Ann. § 66–4003 and § 75–1427, citing cases from Arizona, Nebraska and Florida and holding that the facts in *Wallace* lent no precedent to the question.

In *Travelers Ins. Co. v. National Farmers U. Prop. & C. Co.*, 252 Ark. 624, 480 S.W.2d 585 (1972), the Arkansas Supreme Court similarly determined that a policy provision providing for deduction of any amounts received from workers compensation benefits from uninsured motorist coverage is void as in derogation of the statutes. The Court stated:

"It is true that the parties are free to contract upon any terms not contrary to public policy or the terms of our statutes. *MFA Mutual Ins. Co. v. Bradshaw*, 245 Ark. 95, 431 S.W.2d 252. * * *

"Furthermore, the argument that the public policy of Arkansas was declared in *M.F.A. Mutual Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742, does not persuade us to allow the credit. There the clause was an 'other insurance' limitation and the two policies were issued by the same company. We said that it was not the legislative intention that the insured be afforded greater insurance protection against the uninsured motorist than would have been available had he been injured by an operator with a policy containing the minimum statutory limits required by Ark.Stat.Ann. § 75–1427."

In *Harris v. Southern Farm Bureau Cas. Ins. Co.*, 247 Ark. 961, 448 S.W.2d 652 (1970), the Court referred to the *Wallace* case in upholding an "other insurance" clause where the non-owned automobile was insured with a policy containing uninsured motorists coverage for the same amount as the insurer of the person injured. The *Howe* case was also referred to, despite the criticism of its bases, and possibly without knowledge of such criticism.

Turning now to the policy of insurance issued to Bobby Dugal by Commercial Standard, the policy provides, as relevant to the uninsured motorist coverage:

"6. Limits of Liability:

(a) The limit of liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages, . . . because of bodily injury sustained by one person as the result of any one accident . . . .

"7. Other Insurance: . . .

. . . If the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of this insurance and such other insurance."

It is readily apparent that the policy language differs from the MFA policies involved in the *Wallace* case. Those policies expressly provided for instances of "other insurance" *with the same company.* The Commercial Standard policy, like the State Farm policies involved in *Woolston*, does not. In view of this difference, and the similarity of the language of the policy provision to that considered by Judge Henley in *Woolston*, the Court is constrained to hold, as did Judge Henley, that the language is ambiguous as to whether the provision applies to other insurance with the same company. *Woolston* having been decided in 1969 and *Wallace* in 1968, the insurance company should have certainly been aware of these rulings at the time it drafted the policy. Had it wished to preclude any "stacking" under these decisions, it had merely to follow the language used in the *Wallace* policies. Having failed to do so, it must suffer the consequences of the language of the policy being construed against it, the exact language of the policy having previously been held ambiguous.

Mr. Dugal paid a total of thirteen premiums for coverage insuring against personal injuries by uninsured motorists. Under the pro-ration provisions of the policies, Northwest National has tendered $5,000 for its pro rata liability. The twelve separate uninsured motorist coverages insuring any named insured against injury while occupying non-owned automobiles included within the Commercial Standard policies must each bear a pro rata share of $5,000, a total coverage in the amount of $60,000.

Such a holding is clearly not precluded by the *Wallace* ruling or *Varvil v. M.F.A. Mutual Ins. Co.*, 243 Ark. 692, 421 S.W.2d 346 (1967), each of which contained express policy provisions defining "other insurance" to include other insurance provided by the same company. Such a holding would be required to harmonize the ruling in this action with that of Judge Henley in *Woolston*. This would also be in accord with the majority of jurisdictions which have considered the question, as alluded to by Judge Dillin in *Simpson v. State Farm*, supra, and by counsel herein in their excellent briefs as to the law of other jurisdictions.

Judgment will, therefore, be entered in favor of plaintiff against defendant in the amount of $55,000.00, the balance of the damages found to be due plaintiff, after crediting the $5,000.00 tender by Northwest National of its coverage. No penalty or attorney fee is warranted under the Arkansas law, the recovery being less than the amount demanded. Interest on the award will be allowed at the rate of 10% per annum from date of judgment until paid and costs will be taxed to the defendant.