**Amanda Leigh WHITNEY Plaintiff**

v.

**SHELTER MUTUAL INSURANCE Defendant**

No. 04–2079.

United States District Court,
W.D. Arkansas,
Ft. Smith Division.

Nov. 9, 2004.

---

J. Randolph Shock, Fort Smith, AR, for Plaintiff.

Thomas B. Pryor, Fort Smith, AR, for Defendant.

## ORDER

DAWSON, District Judge.

The Plaintiff instituted this action in state court, asserting that Defendant breached an insurance contract entered into by the parties. Defendant removed the action to this Court based on diversity jurisdiction. (Doc. 1 & Attach.) Currently before the Court is Defendant's Motion for Summary Judgment, Plaintiff's Response and Counter Motion for Partial Summary Judgement, Defendant's Reply, Defendant's Response to Plaintiff's Coun-

ter Motion for Partial Summary Judgment, Plaintiff's Reply to Defendant's Response to Plaintiff's Counter Motion for Partial Summary Judgment, and Defendant's Supplemental Reply. (Docs. 10, 13, 16, 17, 18, and 20.) For the reasons that follow, Defendant's motion is GRANTED, and Plaintiff's motion is DENIED.

This is a diversity action brought by Amanda Leigh Whitney (hereinafter "Whitney") who qualifies as an "additional insured" seeking to recover from Defendant, Shelter Mutual Insurance Company (hereinafter "Shelter"), under the provisions of Uninsured Motorists Coverage (hereinafter "UM") contained in policies of insurance written by Shelter. The facts of this case are not in dispute. (Doc. 9.) On September 29, 2002, Plaintiff was involved in a serious accident while riding as a passenger on a four-wheeler all-terrain vehicle owned by an uninsured and negligent party. As a result of the accident, Plaintiff sustained injuries with resulting damages in an amount over $100,000. At the time of the accident, there were in effect four policies of automobile insurance issued by Shelter; except for the declarations, the four Shelter policies are identical. Each policy reflects a charge for each listing of the UM coverage. The vehicle in question was an uninsured motor vehicle within the meaning of the UM coverage of the Shelter policies. Shelter agrees that Whitney is entitled to recover the total sum of $100,000 under the UM coverage for injuries sustained in the September 29, 2002 accident. (Doc. 9.)

 The crux of the disputed matter is straightforward and provides the basis for the parties' motions for summary judgement. Whitney claims that she is entitled to "stack" the UM coverages of the four Shelter policies (Doc. 13), and Shelter denies that Whitney may "stack" her UM coverages under the four policies. (Doc. 10.)

The term "stacking" is used to describe a situation where all available policies are totaled to create a larger pool from which the injured party may draw in order to compensate him or her for the actual loss where a single policy is not sufficient to render one whole. Stacking does not allow an insured to obtain a double recovery or a windfall of any sort, but rather increases the pool of insurance money available to an insured who becomes injured. To obtain that money, the insured must prove that his injuries justify the recovery sought. See Neil Chamberlin and J. Stephen Holt, *Why Arkansas Should Overturn Its Anti–Stacking Precedent: A Look At Aggregating Uninsured and Underinsured Motorist Coverage*, 21 U. Ark. Little Rock L.J. 413 (1999). Here, each of Whitney's four policies with Shelter have $100,000 in UM coverage. (Doc. 1. Attach.) As reflected above, the parties have stipulated that Whitney's injuries are not less than the $100,000 Shelter has agreed to pay (representing the policy limits of one policy). Whitney argues that she should be entitled to a pool of $400,000 from which to be made whole. Shelter asserts that, as a matter of law, Whitney is not entitled to stack the coverages.

This Court's function at the summary judgment stage is not to weigh the evidence, but to determine whether the record, when viewed in the light most favorable to the non-moving party, leaves no genuine issue of material fact to be decided, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). To survive a motion for summary judgment, the non-moving party need only show sufficient evidence

that supports a material factual dispute that would require resolution by a trier of fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

The parties in this case both agree that the facts are not disputed. (Docs. 11 and 14.) What remains is a question of law. The parties have both briefed the issues in this case. Succinctly, this case is about the interpretation of an insurance contract and the application of Arkansas law. It is important to analyze the policies in question to ascertain what they provide with respect to UM coverage.

The parties have stipulated that the policies in question are attached to Shelter's original answer to the complaint. (Doc. 9.) They each consist of four Declarations Pages showing $100,000 in UM coverage for "each person" on each policy. Also attached is a copy of the policy provisions that apply to all four policies. (Doc. 1 Attach. Shelter Form A–283–A). Coverage "E" of the provisions is entitled UNINSURED MOTORISTS (DAMAGES FOR BODILY INJURY) and pertains to UM. It states that Shelter will pay for damages relating to bodily injury arising out of an accident with an uninsured motorist. Under the EXCLUSIONS section of Coverage "E", entitled "LIMITS OF LIABILITY" the policy states in pertinent part:

"(1) The limit of liability stated in the Declarations for "each person" is the limit of **our** liability for all damages for care or loss of services or consortium, because of **bodily injury** sustained by one person as the result of any one accident." (Doc. 1 Attach, Shelter Form A–283–A.)

Still within the EXCLUSIONS section of coverage "E", under the heading "OTHER INSURANCE", the policy states:

"With respect to injury to an **insured** while in an auto not owned by **you**, this insurance shall apply only as excess insurance over any other similar insurance available to the **insured** as primary insurance. This insurance will then apply only in the amount that its limits of liability exceed the limits of liability of the other insurance. Except as above, if the insured has other insurance available, the damages shall not exceed the limits of liability of this insurance or of the other insurance, whichever is larger. **We** will not be liable for a greater proportion of any loss to which this coverage applies than the limits of liability of this insurance bear to the sum of the limits of liability of this insurance and any other similar insurance available to the **insured**." *Id.*

In PART VII, entitled "CONDITIONS", under the heading "APPLICATION OF POLICY PROVISIONS", the policy states in pertinent part:

"Policy provisions apply separately to each of two or more **autos** insured under this policy." *Id.*

Still within the CONDITIONS section, under the heading "OTHER AUTO INSURANCE IN THE COMPANY", the policy states:

"With respect to any occurrence, accident, death, or loss to which this and any other auto insurance policy issued to **you** by **us** also applies, the total limit of

**our** liability under these policies won't exceed the highest applicable limit of liability or benefit under any one policy." *Id.*

Given the foregoing policy provisions, the Court examines applicable Arkansas law, as we are obliged to apply Arkansas law. The Court must examine any issue of ambiguity, construction, and the legality of applying anti-stacking clauses in contracts of insurance in Arkansas.

▪ The initial determination of the existence of an ambiguity rests with the Court and, when a contract is unambiguous, its construction is a question of law for the court. *Kanning v. Allstate Ins. Cos.*, 67 Ark.App. 135, 992 S.W.2d 831 (1999). An insurance policy is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction. *See* id. The language in an insurance policy is to be construed in its plain, ordinary, and popular sense. *Tri–State Ins. Co. v. Sing*, 41 Ark. App. 142, 850 S.W.2d 6 (1993). Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in the light of their general object and purpose. *See id.* Insurance policy provisions must be construed most strongly against the insurance company which prepared the policy. *Smith v. Prudential Property and Cas. Ins. Co.* 340 Ark. 335, 10 S.W.3d 846 (2000). If a reasonable construction would justify recovery under an insurance policy, it is the duty of the court to give that construction to the policy. *Id.* If the language in an insurance policy is ambiguous or if there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. *Id.*

Shelter directs this Court to *Shelter Mutual Ins. Co. v. Williams*, 69 Ark.App. 35, 9 S.W.3d 545 (2000) where the Arkansas Court of Appeals had occasion to interpret the identical language set forth above under the heading "OTHER INSURANCE" as it pertained to Under Insured Motorist Coverage (hereinafter "UIM"). This very language was declared to be unambiguous as applied to UIM by the Arkansas Court of Appeals stating: "Although appellant contends that the term 'primary insurance' is ambiguous, we do not agree. As a fundamental principle of insurance law, under a standard automobile policy, primary liability is generally placed on the insurer of the owner of the automobile involved and the policy providing the nonownership coverage is secondary. 7A Am.Jur.2d *Automobile Insurance* § 543 (1997). We recognized this basic rule in *State Farm Fire & Cas. Co. v. Amos.* " *Shelter*, 69 Ark.App. at 41–42, 9 S.W.3d 545 (finding that the identical above-quoted "OTHER INSURANCE" policy clause prohibits the stacking of UIM coverages where two insurance companies were potentially liable).

The Court notes that the case at bar involves UM coverage, stacking, and only one insurance company, and thus finds *Williams* determinative of the proposition that this type of provision is not ambiguous when applied to a fact scenario where there are two separate insurance companies that may be potentially liable.

Whitney directs this Court to the *Farm Bureau Mutual Ins. Co. Of Arkansas, Inc. v. Barnhill*, 284 Ark. 219, 681 S.W.2d 341 (1984) and *Barnhill v. Farm Bureau Mutual Ins. Co. Of Arkansas, Inc.*, 12 Ark. App. 123, 671 S.W.2d 233 (1984). In *Barnhill*, the court interpreted a similar "Other Insurance" clause as applied to a fact scenario that is apposite the case at bar. (Where an insured is attempting to stack

their UM policies upon each other rather than on a third party's liability.) In *Barnhill*, the Plaintiff was allowed to stack his four $10,000 UM policies. The Court of Appeals held, and the Arkansas Supreme Court affirmed, that the "Other Insurance" clause was "undoubtedly ambiguous" as the holder of a policy could not be expected to realize that the reference to the limits of liability included not only a policy issued by another company but also the very policy he was reading. *Farm Bureau Mutual Ins. Co. Of Arkansas, Inc. v. Barnhill*, 284 Ark. 219 at 221–22, 681 S.W.2d 341. *See also Woolston v. State Farm Mutual Ins. Co.*, 306 F.Supp. 738 (W.D.Ark., 1969); *Dugal v. Commercial Standard Ins. Co.*, 456 F.Supp. 290 (W.D.Ark.1978). The *Barnhill* court distinguished *M.F.A. Mutual Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968) (holding that unambiguous UM policies can be stacked) on the basis that there was unambiguous language in that case that referred to "other insurance issued by the same company" in the policy. *Farm Bureau Mutual Ins. Co. of Arkansas, Inc. v. Barnhill*, 284 Ark. 219 at 220, 681 S.W.2d 341. Most notably the Arkansas Court of Appeals cited with approval *Dugal v. Commercial Standard Ins. Co.*, 456 F.Supp. 290 (W.D.Ark.1978) where the *Dugal* court stated "had [the insurance company] wished to preclude any 'stacking' under these decisions, it had merely to follow the language used in the *Wallace* policies. Having failed to do so it must suffer the consequences of the policy being construed against it, the exact language of the policy having previously been held ambiguous." *Barnhill*, 12 Ark.App. 123, at 126, 671 S.W.2d 233. As mentioned above, the Arkansas Supreme Court found that the significant difference between *Barnhill* and *Wallace* was that *had* the insurance company specifically referred to other insurance issued by the same company in *Barnhill*, the result would have followed the precedent set forth in *Wallace*. *See Barnhill*, 284 Ark. 219, at 220, 681 S.W.2d 341.

There is a long line of Arkansas decisions upholding anti-stacking provisions. *See State Farm Fire & Cas. Co. v. Amos*, 32 Ark.App. 164, 798 S.W.2d 440 (1990) (finding the anti-stacking language of the policy unambiguously precluded the insured's attempt to avoid the policy's limitations); *Harris v. Southern Farm Bureau Casualty Ins. Co.*, 247 Ark. 961, 448 S.W.2d 652 (1970) (giving force to insurance clause precluding stacking of benefits); *M.F.A. Mut. Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968) (holding that a policy's clear and unambiguous provision precluded stacking of uninsured motorists coverage); *Travelers Ins. Co. v. Estes*, 283 Ark. 61, 670 S.W.2d 451 (1984) (upholding language in the policy that "unequivocally prevents 'stacking' . . . no matter how many cars are covered by the policy"); *Joshua v. Hartford Accident & Indem. Co.*, 666 F.2d 1148, 1149 n. 3 (8th Cir.1981) (concluding that a limit of liability provision would preclude stacking of benefits under Arkansas law); *Treece v. Home Ins. Co.*, 295 F.Supp. 262, 263 (E.D.Ark.1969) (applying the *Wallace* holding to preclude stacking in a case in which the insured had two policies issued by the same insurer).

Anti-stacking clauses have been upheld by Arkansas courts so long as they are not ambiguous. *See generally Smith v. Prudential Prop. & Cas. Ins.*, 340 Ark. 335, 10 S.W.3d 846 (2000); *Shelter Mut. Ins. Co. v. Williams*, 69 Ark.App. 35, 9 S.W.3d 545 (2000); *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998); *Kanning v. Allstate Ins. Cos.*, 67 Ark.App. 135, 992 S.W.2d 831 (1999); *MFA Mut. Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968).

The Arkansas Supreme Court has recently had several occasions to overrule

*Wallace* and its progeny and has not done so. *See Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998); *Chamberlin v. State Farm Mutual Automobile Ins. Co.*, 343 Ark. 392, 36 S.W.3d 281 (2001). Despite what it believes to be an unjust result, this Court, sitting in diversity, is bound to follow Arkansas law in its current state. The dissent in *Chamberlin* stated:

"In *Youngman* ... the majority recognizes that thirty-six states have allowed stacking of insurance coverage policies that have been actually purchased and paid by the insured. I believe it is time we joined the majority view and respectfully dissent. However, by the majority's decision today to allow prohibitions against stacking to be enforced, those adversely affected by the anti-stacking rule must look to the legislature for guidance on the underlying issue of public policy. Otherwise principles of *stare decisis* will preclude us from examining this issue again."

*Chamberlin v. State Farm Mut. Auto. Ins. Co.*, 343 Ark. 392, 36 S.W.3d 281 (2001). The legislature has had an opportunity to address the call from three members of the Arkansas Supreme Court and as of yet has not done so on the issue of stacking. This Court agrees in principle with the dissents in *Youngman* and *Chamberlin* and believes that anti-stacking clauses are against public policy and should not be enforced. However, the Court is bound to follow Arkansas law.

In *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998), the majority of the Arkansas Supreme Court discussed a simple rule for analyzing almost any stacking problem: "Read the Statute and Read the Policy!" *See Youngman*, 334 Ark. at 79, 971 S.W.2d 248 (citing *State Farm Mut. Auto. Ins. Co. v. Beavers*, 321 Ark. 292, 901 S.W.2d 13 (1995)) (quoting Douglass and Telegadis,

*Stacking of Uninsured and Underinsured Motor Vehicle Coverages*, 24 U. Rich. L.Rev. 87 (Fall 1989)). In Arkansas, stacking is not prohibited by statute and may be precluded by an applicable anti-stacking clause. *See generally Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968). Therefore, the Court is left to read the policy and determine its legal effect.

If the "Other Insurance" clause stood alone in this case, the Court would be inclined to find that the "Other Insurance" clause would be ambiguous as applied to the facts at bar. However, that is not the case. As indicated above, the policy we are construing has included the same language that was held to be an unambiguous anti-stacking clause in the *Wallace* case. This clause, entitled "Other Auto Insurance in the Company", clearly awakens the reader's consciousness to the fact that the clause will pertain to a situation whereby the insured has more than one policy with the company. It is located on page 12 of the policy in the fifth paragraph of the "Conditions" section. The clause heading is in all capital letters. The Court believes that the purpose and effect of the placement of the clause in the Conditions section is that it pertain to the entire policy. As to the language of the clause, the Court finds that the "Other Auto Insurance In The Company" clause unambiguously limits any recovery by the insured to the policy limits of any one policy that the insured has with the company regardless of the amount of her loss.

Whitney argues, *inter alia*, that putative conflicting clauses, when read together, create an ambiguity that must be resolved in favor of the insured. The clauses at issue are as follows: # 1 "Application of Policy Provisions" clause (found in the Conditions section);# 2 the Declarations pages (found in the front of the policies); # 3 the "Limits of Liability" clause (found

in the UM section); and # 4 the "Other Auto Insurance in The Company" clause found in the Conditions section. The Court has reviewed these clauses and finds instructive the case of *Smith v. Prudential Property and Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000) where the Arkansas Supreme Court was presented with a somewhat similar set of facts. In *Smith,* the insured argued the declaration page showed he had coverage on two cars. Thus, he should be able to stack his coverage. The insurance company pointed to another section that contained anti-stacking language. The trial court found that an ambiguity existed pertaining to the stacking issue, and the Arkansas Supreme Court reversed stating: "Such anti-stacking language clearly prevents Smith from obtaining UIM coverage from both of his policies." *Id.* Even without the rationale set forth in *Smith,* the Court comes to the conclusion that, when read together, the aforementioned clauses are not ambiguous.

While it seems unfair to permit a charge for four separate UM provisions in four policies, the Court concludes that anti-stacking language found in the "Other Auto Insurance in the Company" clause clearly prevents Whitney from obtaining UM coverage on more than one of her policies. The Court has examined the policy in its totality and finds that the policy unambiguously precludes the stacking of UM. By applying the current state of Arkansas law, the Court can only conclude that the unambiguous anti-stacking provision precludes Whitney from stacking her UM coverages.

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.